# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Nan R. Nolan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 04438 | **DATE** | 11/22/2010 |
| **CASE TITLE** | Village of Rosemont vs. Priceline.com Inc., et al. | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, Defendant Expedia, Inc.'s Motion to Compel [Doc. 70] is **GRANTED**.

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

　　　Plaintiff's Complaint alleges that Defendants, which are all online travel companies, wrongfully refused to remit the tax described in Rosemont Code §§ 10-22 through 29 ("Hotel Tax"). Defendants assert that they are not liable for the Hotel Tax because: (i) they are not hotel owners or operators as defined in the ordinance; (ii) the amount they charge and retain for their online reservation services are not part of the "hotel room rate;" and (iii) they do not collect the Hotel Tax from their customers.

　　　Defendant Expedia, Inc.'s Motion to Compel requests that the Court compel Plaintiff Village of Rosemont ("Village") to produce (i) two pamphlets that Plaintiff's counsel sent to representatives of the Village; and (ii) two legal services retention agreements with the Village's counsel.[1] (Mot. ¶¶ 7-9.) Plaintiff asserts that the four documents do not "have any conceivable relevance to any issue in this case, and can only be used in an effort to distract and confuse the jury." (Supp. Resp. ¶ 3.) Plaintiff also contends that one of the pamphlets is protected by attorney-client privilege. (*Id.* ¶ 7.)

　　　Under Rule 37, a party may move to compel discovery where another party fails to respond to a discovery request or where the response is evasive or incomplete. Fed. R. Civ. P. 37(a)(3)-(4). "In ruling on motions to compel discovery, 'courts have consistently adopted a liberal interpretation of the discovery rules.'" *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006) (quoting *Wilstein v. San Tropai Condo. Master Ass'n*, 189 F.R.D. 371, 375 (N.D. Ill. 1999)); *see Cannon v. Burge*, 2010 WL 3714991, at *1 (N.D. Ill. 2010) ("The federal discovery rules are liberal in order to assist in trial preparation and settlement."); *Bond v. Utreras*, 585 F.3d 1061, 1075 (7th Cir. 2009). "Courts commonly look unfavorably upon significant restrictions placed upon the discovery process" and the "burden rests upon the objecting party to show why a particular discovery request is improper." *Kodish*, 235 F.R.D. at 450; *accord Cannon*, 2010 WL 3714991, at *1. As with all discovery matters, the Court has broad discretion whether to compel discovery. *See Kodish*, 235 F.R.D. at 450.

　　　Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject

| STATEMENT |
|---|

matter involved in the action." Fed. R. Civ. P. 26(b)(1). Relevancy under Rule 26 is extremely broad. *See Saket v. Am. Airlines*, 2003 WL 685385, at *1 (N.D. Ill. 2003). In fact, "[r]equests for discovery are relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Kodish*, 235 F.R.D. at 450; *see Saket*, 2003 WL 685385, at *2. Furthermore, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

In this case, the Court finds the four documents relevant to the subject matter of the action. As an initial matter, Plaintiff confuses relevancy for production purposes with admissibility at trial. (*See* Supp. Resp. ¶ 3.) As the Supreme Court has observed, "'relevant to the subject matter involved in the pending action'—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Indeed, in ruling that the documents are relevant, the Court offers no opinion whether they would be admissible as evidence in this case. Plaintiff also misapprehends the parties' burdens with regard to discovery, claiming that it is Expedia's burden to demonstrate relevancy. (Resp. ¶¶ 6, 9.) On the contrary, it is Plaintiff's burden to show why Expedia's discovery requests are improper. *See Kodish*, 235 F.R.D. at 450.

With regard to the two pamphlets,[2] Village representatives testified that they never considered that the Hotel Tax ordinance applied to online travel companies until they received the pamphlets from counsel. (*See* Reply ¶¶ 2, 9; Mot. Exs. D, E.) Thus, the pamphlets arguably changed the way the Village interpreted and applied its own ordinance, at least with regard to the Defendants in this action. Accordingly, because all reasonable ambiguities in the tax code must be construed in Defendants' favor, *see Mahon v. Nudelman*, 36 N.E.2d 550, 552 (Ill. 1994) ("Taxing statutes are to be strictly construed. Their language is not to be extended or enlarged by implication, beyond its clear import. In cases of doubt they are construed most strongly against the government and in favor of the taxpayer."), the pamphlets are relevant to Expedia's defenses.

Furthermore, Village witnesses testified that their "knowledge" of Defendants' business practices—which form the basis for the Complaint's allegations—came entirely from these same pamphlets. (*See* Reply ¶ 10 & Ex. B.) For example, Defendants dispute that they "re-sell" hotel rooms, which Village representatives testified was a key assertion in the pamphlets that convinced the Village that Defendants owed it a tax. (*See* Reply ¶ 10 & Ex. B.) Thus, the pamphlets are relevant to dispute the Complaint's allegations regarding Defendants' business practices and whether the Hotel Tax applies to them.

For similar reasons, the two legal service retention agreements entered into by the Village are also relevant. The legal service agreements contain, among other things, the fee arrangements between counsel and the Village. (*See* Supp. Reply 5; Mot. Ex. D.) The Village Board of Trustees voted to approve this litigation when it entered into the first retention agreement. (*See* Reply 5; Mot. Ex. D.) The fact that Plaintiff did not interpret its Hotel Tax to apply to Defendants until entering into the retention agreement is relevant to how the Hotel Tax should be reasonably construed. Furthermore, the retention agreement could be relevant in settlement discussions. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984) ("Liberal discovery is provided for the sole purpose of assisting in the preparation and trial, or the settlement, of litigated disputes."); *accord Bond*, 585 F.3d at 1075.

Alternatively, Plaintiff contends that the second version of the pamphlet sent to the Village by counsel Karl Barth is protected by attorney-client privilege.[3] (Supp. Resp. ¶ 7.) Plaintiff argues that the pamphlets "consisted of legal advice" and "[t]he attorney-client privilege . . . protects the later version of the [pamphlet], which was provided either at or shortly before a meeting between Mr. Barth and [Peter Rosenthal, Plaintiff's Village Attorney,] to discuss the Village's claims, as there was clearly an attorney-client relationship established by the time Mr. Rosenthal received the second [pamphlet.]" (*Id.* ¶¶ 7, 15.) Expedia contends that the second pamphlet is not protected by attorney-client privilege because "marketing materials given to prospective clients . . . are not protected by the attorney-client privilege" and "the Village has completely failed to

| STATEMENT |
|---|

demonstrate that the second [pamphlet] was confidential." (Supp. Reply 3-4 & n.2.)

    The essential elements for the creation and application of the attorney-client privilege are well-established:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*United States v. White*, 950 F.2d 426, 430 (7th Cir.1991) (internal citation and quotation marks omitted). "The attorney-client privilege is an exception to the rule that all relevant evidence should be disclosed in an adversary proceeding." *Baxter Travenol Labs., Inc. v. Abbott Labs.*, 117 F.R.D. 119, 120 (N.D. Ill. 1987); *see Vardon Golf Co. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 532 (N.D. Ill. 2003) ("Because the privilege has the effect of withholding relevant information, it is applied only when necessary to achieve its purpose."). As such, "[t]he party asserting the privilege bears the burden of establishing all elements of the privilege." *Roth v. Aon Corp.*, 254 F.R.D. 538, 540 (N.D. Ill. 2009). "In addition to protecting communications from the client to the attorney, communications from the attorney to the client are privileged if they constitute legal advice or would reveal the substance of a client confidence—directly or indirectly." *Vardon Golf*, 213 F.R.D. at 531; *see United States v. Defazio*, 899 F.2d 626, 635 (7th Cir. 1990).

    Here, after careful review, the Court finds that the second pamphlet is not protected from disclosure by the attorney-client privilege. First, to the extent that the pamphlets are marketing materials, they are not protected. *See EEOC v. CRST Van Expedited, Inc.*, 2009 WL 136025, at *4 (N.D. Iowa 2009) ("[T]he Court concludes that contacts by the EEOC in an effort to solicit an attorney-client relationship are not protected by the attorney-client privilege."); *Morisky v. Public Svc. Elec. & Gas Co.*, 191 F.R.D. 419, 423-24 (D.N.J. 2000) (In employees' class action case, questionnaires distributed by counsel at public meeting to which employees were invited before lawsuit was filed were not protected by attorney-client privilege; purpose of questionnaires was to solicit potential clients.); *Auscape Int'l v. Nat'l Geographic Soc'y*, 2002 WL 31250727, at *1 (S.D.N.Y. 2002) ("[L]etters to prospective clients to encourage their involvement in a class action . . . are not communications between attorney and client and are not confidential. They are, in significant measure, direct mail advertising."); *Hood v. Cent. United Life Ins. Co.*, 2008 WL 2593787, at *1 (N.D. Miss. 2008) (solicitation letter to potential client not protected by attorney-client privilege). In fact, a Village representative acknowledged that the pamphlets were marketing materials and testified that the second one was received before the Village Board of Trustees retained counsel in this case. (Mot. Ex. E.) Even Plaintiff's counsel describes them as "proposals" in the privilege log. (Reply Ex. A.)

    Second, Plaintiff has not asserted that either of the pamphlets was intended to be confidential or revealed confidential information. (*See* Supp. Resp. ¶¶ 7-15.) Plaintiff has "the burden of showing that the documents they wish to protect fall within the scope of the privilege. Simply asserting these privileges without making any showing as to why the court should apply them to the documents at issue in this case, is insufficient to meet this burden." *Fine Line Distribs., Inc. v. Rymer Meats, Inc.*, 1994 WL 376283, at *3 (N.D. Ill. 1994); *see also Roth*, 254 F.R.D. at 540 ("The party asserting the privilege bears the burden of establishing all elements of the privilege."). Because Plaintiff has not demonstrated the confidential nature of the pamphlets and a formal attorney-client relationship was not in place when the second pamphlet was received, Plaintiff's claim of attorney-client privilege necessarily fails. *See In re Air Crash Disaster*, 133 F.R.D. 515, 518 (N.D. Ill. 1990). ("Furthermore, communications from attorney to client are privileged only to the extent that they reveal confidential information furnished by the client.").

    Finally, the second pamphlet is merely a revised or updated version of the first pamphlet, which Plaintiff

| STATEMENT |
|---|

concedes is not protected by attorney-client privilege. (Supp. Resp. ¶¶ 6-7; *see* Reply Ex. A (Plaintiff's privilege log describing the second pamphlet as an "updated" proposal).) Furthermore, the Village's representatives testified about the pamphlets' contents without any instructions not to answer from counsel on grounds of attorney-client privilege. (*See* Mot. Exs. D & E.) "Any voluntary disclosure by the holder of the attorney-client privilege is inconsistent with the attorney-client confidential relationship and thus waives the privilege." *Powers v. Chicago Transit Auth.*, 890 F.2d 1355, 1359 (7th Cir. 1989). Thus, Plaintiff cannot make a privilege claim over material that it has already voluntarily disclosed. *See Vardon Golf*, 213 F.R.D. at 532 ("[T]he privilege can be waived when a party shares the confidential information with third parties."). The Village Attorney testified that the only difference between the first and second pamphlet was that the second one contained updated information about additional awards counsel had received from tax cases in other jurisdictions. (*See* Mot. Ex. D.). Because this additional material is similar to information already disclosed in the first pamphlet, the attorney-client privilege does not apply. *See Vardon Golf*, 213 F.R.D. at 532 ("[V]oluntary disclosure of privileged communications waives the privilege as to all other communications dealing with the same subject matter."); *Fujisawa Pharm. Co. v. Kapoor*, 162 F.R.D. 539, 541 (N.D. Ill. 1995) ("Voluntary disclosure of privileged information about a matter waives the privilege as to all information on the same subject matter."); *see also In re Consol. Litig. Concerning Int'l Harvester's Disposition of Wis. Steel*, 666 F. Supp. 1148, 1153 (N.D. Ill. 1987) ("[A] party should not be allowed to exploit selective disclosure for tactical advantage.").

In sum, as discussed above, Defendant Expedia, Inc.'s Motion to Compel [Doc. 70] is **GRANTED**. Plaintiff is ordered to produce the two pamphlets that the Village received from attorney Karl Barth and the two legal services retention agreements with its counsel in this case.

---

1. The Motion to Compel also requests that the Court compel Plaintiff to produce a privilege log and an audiocassette of the Village's Board of Trustees Meeting authorizing the lawsuit. (Mot. ¶¶ 4, 10.) However, Plaintiff has now produced a privilege log and confirmed that the audiocassette sought by Expedia does not exist. (Resp. ¶ 1; Reply 1.)

2. Plaintiff refers to the pamphlets as "legal memoranda," and Expedia describes them as "marketing booklets." (*Compare* Resp. ¶ 7 *with* Mot. ¶ 12.) The Court refers to them as "pamphlets," which is how the Village's witness characterized them in his deposition. (Mot. Ex. D.)

3. Plaintiff concedes that the first version of the pamphlet sent to the Village by counsel in March 2009 is not privileged, as it predated the attorney-client relationship established in this case. (Supp. Resp. ¶ 6.)