**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THE VILLAGE OF ROSEMONT, ILLINOIS, <br><br> Plaintiff, <br><br> v. <br><br> PRICELINE.COM INCORPORATED; TRAVELWEB LLC; TRAVELOCITY.COM LP; SITE59.COM LLC; EXPEDIA, INC.; HOTELS.COM, L.P.; and HOTWIRE, INC., <br><br> Defendants. | Civil Action No. 09 CV 04438 <br><br> **Judge Guzman <br> Magistrate Judge Nolan** |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
<u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

# TABLE OF CONTENTS

**Page**

BACKGROUND ............................................................................................................. 2

    A.    Plaintiff's Hotel Tax Ordinance ............................................................. 2

    B.    The Hotel Industry and Defendants' Reservation and Travel Services ................ 2

        1.    Hotel Room Rentals ............................................................. 2

        2.    Defendants' Travel Websites And Services ............................. 4

        3.    Defendants' Reservation Charges ........................................... 5

        4.    Defendants' Hotel Contracts .................................................. 6

    C.    The Enforcement History of the Hotel Tax .......................................... 7

ARGUMENT ............................................................................................................. 7

I.    SUMMARY JUDGMENT STANDARD AND PRINCIPLES OF
CONSTRUCTION .......................................................................................... 7

II.    BY ITS OWN TERMS, THE HOTEL TAX DOES NOT APPLY TO
DEFENDANTS ............................................................................................... 8

    A.    The Hotel Tax Does Not Apply to Defendants' Services ...................... 9

    B.    Defendants Are Not Hotel "Owners" and Thus Have No Obligation To
Collect the Hotel Tax ..................................................................... 10

        1.    The Defendants Do Not Fall Within the Ordinance's Definition of
"Owner." ..................................................................... 10

        2.    Defendants Are Not Hotel "Owners" Under That Term's Common
Meaning .................................................................... 11

    C.    Plaintiff's Construction of the Hotel Tax Would Result in Double
Taxation ................................................................................... 13

    D.    Plaintiff's Construction Is Inconsistent with the Ordinance's Enforcement
History ...................................................................................... 13

III.    DEFENDANTS' AFFIRMATIVE DEFENSES REQUIRE THE ENTRY OF
JUDGMENT IN THEIR FAVOR ................................................................. 14

    A.    The Ordinance, As Interpreted by the Village, Violates the Illinois
Constitution .............................................................................. 14

    B.    The Ordinance, As Interpreted by the Village, Imposes a Tax That Is
Prohibited by the Commerce Clause of the United States Constitution ............. 15

        1.    There Is Insufficient Nexus To Impose the Hotel Room Tax Upon
the OTCs And Their Services ........................................ 15

        2.    The Hotel Tax Violates the Fair Apportionment Requirement by
Taxing Amounts Not Attributable to Economic Activity in the
Village ..................................................................... 18

        3.    The Hotel Room Tax Discriminates Against Interstate Commerce ........ 20

**TABLE OF CONTENTS**

**(continued)**

Page

4.  As Applied, the Hotel Tax Is Not Fairly Related to the Services, If Any, the Village Provides to Defendants .................................................. 20

C.  The Ordinance, As Interpreted By The Village, Creates A "Discriminatory Tax" Prohibited By The Internet Tax Freedom Act ........................................... 22

1.  The Hotel Tax Is Not Generally Imposed on Similar Transactions ......... 22

2.  The Village Does Not Impose The Hotel Tax On OTCs At The Same Effective Rate That Is Applied To Other Travel Intermediaries ........................................................................................... 23

3.  The Village Requires Online Travel Companies To Collect And/Or Pay the Tax But Does Not Require Non-Online, Traditional Travel Intermediaries To Collect And/Or Pay the Tax ...................................... 23

D.  Applying The Hotel Tax to Defendants Violates Defendants' Due Process And Equal Protection Rights ............................................................... 24

1.  The Hotel Tax Is Unconstitutionally Vague ........................................... 24

2.  The Hotel Tax Lacks a Rational Basis For Classifications Subjecting The Defendants To The Tax ................................................. 25

CONCLUSION ................................................................................................................. 25

The Village of Rosemont ("the Village" or "Plaintiff") is a tax authority. Through this lawsuit (rather than legislative amendment), it seeks to expand the reach of its local hotel tax ordinance to Defendants—seven out-of-state online travel companies ("OTCs").[1] The hotel tax is imposed on the "use and privilege of renting a hotel or motel room" and requires hotel owners to collect and remit the tax. Although Defendants' business model has been used for decades by other travel intermediaries, the Village claims for the first time that Defendants (but not other travel intermediaries using the same business model) are liable to collect and remit taxes on the revenue they earn from providing online travel services. The Village seeks to collect tax on these additional services on top of the taxes already collected from local hotels on the rent charged to travelers to use and rent hotel rooms in the Village.

Plaintiff's strained interpretation of the Village's ordinance requires the Court to accept as true the following false premises: (1) a sales tax upon "the use and privilege of renting a hotel or motel room" is applicable to reservation and travel *services* (when such services can only be associated with occupation taxes); (2) Defendants' compensation constitutes part of the taxable "room rental rate"; (3) Defendants are hotel "owners" tasked with collecting the tax; (4) simply charging for a prepaid reservation is the equivalent of "receiving the consideration for the rental" of a hotel room; and (5) the Court can turn a blind eye to the logical endpoint of Plaintiff's statutory interpretation—impermissible double taxation.

Plaintiff's statutory construction is untenable. The Village's tax ordinance must be interpreted strictly against it, and if two conflicting reasonable constructions give rise to an ambiguity in the ordinance, Defendants' construction must be adopted. And, while the statutory

---

[1] Defendants are three groups of OTCs: (1) Hotels.com, L.P., Hotwire, Inc., and Expedia, Inc. (collectively, the "Expedia Defendants"); (2) priceline.com Incorporated and Travelweb LLC (collectively, the "priceline Defendants"); and (3) Travelocity.com LP and Site59.com LLC (collectively, the "Travelocity Defendants").

interpretation arguments alone provide a sufficient basis to rule in Defendants' favor, a host of statutory and Constitutional defenses would also relieve Defendants of any purported tax collection obligations. As a matter of law, Plaintiff's claim fails. Defendants therefore move for summary judgment and request that the Court dismiss this case with prejudice.

## BACKGROUND

### A.  Plaintiff's Hotel Tax Ordinance

Since the Court dismissed Plaintiff's equitable claims for conversion and unjust enrichment with prejudice (Dkt. No. 52), the only remaining claim is the ordinance claim based on Rosemont Code § 10-22 *et seq*. ("the Hotel Tax," or the "Ordinance"), which imposes tax on the "privilege of renting a hotel or motel room within the Village of Rosemont" at a rate of "7% of the room rental rate (not including taxes or other non-room rental charges added to the bill)." Rosemont Code § 10-23(a). (Defendants' Rule 56.1 Statement of Facts In Support of Their Motion for Summary Judgment (hereinafter "SOF") ¶ 58.)

Although the Hotel Tax is borne by the "rentor," defined as the person who "seeks the privilege of occupying the hotel or motel room," it is the "duty of the owner of every hotel or motel to secure the tax from the rentor" and remit the tax to the Village. Rosemont Code at § 10-23(b), (c). (SOF ¶ 59.) The "owner" who bears the collection duty is defined as the "person having an ownership interest in or conducting the operation of a hotel or motel room or receiving the consideration for the rental of such hotel or motel room." *Id*. at § 10-22. (SOF ¶ 60.)

### B.  The Hotel Industry and Defendants' Reservation and Travel Services

#### 1.  Hotel Room Rentals

The business of owning, operating and managing a hotel is complex. It begins with securing, equipping and maintaining the physical structures of the hotel in accordance with the class of accommodations offered. (SOF ¶¶ 12-13.) The hotel operator must perform multiple

tasks associated with room rentals such as arranging for guest arrival and registration (*e.g.,* bell stand, front desk, parking and ground transportation) furnishing, cleaning and maintaining the hotel rooms, and providing for guest services (*e.g.*, room service, business centers, housekeeping, food and beverage, concierge, in-room TV, fitness centers, etc.). (*Id.*)

To maximize revenue, hotels typically employ revenue managers responsible for setting and adjusting rental rates and deciding which distribution channels to use to secure reservations. (*Id.* ¶¶ 15, 46) While hotels may accept reservations through their own fax, phone, email, and websites, they can also make rooms available for reservations through third-party distribution channels, including travel agents, OTCs, travel wholesalers and consolidators, tour operators, corporate websites, specialty websites, and group booking agencies.[2] (*Id.* ¶ 50.) In every instance, it is the hotel that maintains control over room rates and availability. (*Id.* ¶¶ 32, 45, 49-51.) The hotel can decrease or increase the number of reservations available through third-party distribution channels like Defendants, and can "close-out" availability altogether. (*Id.* ¶¶ 45.) When travelers request reservations through a Defendant's website or call center, the OTC communicates electronically with the selected hotel each time to determine whether the hotel is extending net rate availability to the particular OTC at that time. (*Id.* ¶¶ 32.) If it is, the OTC facilitates a reservation in the traveler's name and charges the traveler's credit card. (*Id.* ¶¶ 32-35.) Defendants have no control over availability at the time a traveler tries to make a reservation, whether a room ultimately will be rented by the hotel to the traveler when he or she arrives, or which specific room the hotel ultimately furnishes. (*Id.* ¶¶ 32, 45, 51.)

Defendants are not hotels. They do not own, operate, or manage hotels or furnish the rooms and amenities associated with hotels. (*Id.* ¶¶ 14, 19.) They do not own or lease any

[2] The hotels closely manage their occupancy rates and typically only allow reservations to be placed through intermediaries when they anticipate a need to fill more rooms. (SOF ¶ 46.)

physical structures containing guestrooms that can be rented to travelers, nor do they provide any of the beds or other items of tangible property that are necessary to make a guestroom habitable. (*See id*.)  They do not perform the various other functions necessary to carry out the daily business of a hotel, such as preparing and maintaining safe, secure and comfortable rooms, housekeeping, room service, security, and other related guest services.  (*Id*.)  Indeed, they lack all essential functions and characteristics of a hotel.  (*Id*.)

Defendants are not the entities that grant travelers temporary possession or use of rooms. (*Id*. ¶ 41.)  Upon a traveler's arrival, the hotel, not Defendants, grants the traveler the right of occupancy—assigning and giving access to a specific room.  (*Id*. ¶ 40.)

### 2. Defendants' Travel Websites And Services

Defendants are internet technology companies that developed and maintain award-winning travel websites, through which they provide travel-related information and services. (SOF ¶ 20.)  The OTCs have invested significant time, effort and money to develop their respective technology platforms, databases and user interfaces to deliver their internet-based services.  (*Id*. at ¶ 22.)  Travelers visit Defendants' websites to explore travel destinations and plan trips.  Defendants make it easy for travelers to plan vacations, locate hotels and attractions, compare the offerings of multiple competing travel suppliers and make all sorts of reservations (hotel reservations, airline reservations, car rental reservations, cruises, etc.).  (*Id*. ¶ 21.) Defendants allow travelers to customize travel and vacation packages combining reservations for different travel components, often at reduced prices.  (*Id*.)  Before the emergence of OTCs, a traveler heading to an unfamiliar city who desired to reserve a room in advance would have to gather that information personally, or visit an offline travel agent, and determine which hotel was most suitable.  (*Id*. ¶ 23.)  Defendants gather and update a vast amount of information designed to make trip planning easy and efficient.  (*Id*. ¶ 24.)

### 3.     Defendants' Reservation Charges

The reservations at issue in this case are prepaid reservations whereby travelers are charged at the time they place reservations using Defendants' web site or call centers. (SOF ¶ 28.) The travelers agree to pay in full in advance, and they authorize Defendants to forward payments to hotels (and other travel suppliers, such as airlines) on their behalf. (*Id.* ¶¶ 28-29, 34-35.) However, Defendants do not have any physical inventory of rooms and suffer no penalty if they fail to book reservations for a particular hotel. (*Id.* ¶¶ 52, 54.)

Because Defendants are the merchants of record on credit card charges for the prepaid reservations, the business model they use has been called the "merchant model." Each Defendant charges the customer's credit card a single total amount comprised of: (a) the rental rate set by the hotel for occupancy of the room (sometimes referred to as the "net rate"); (b) an amount retained by the Defendant for the travel-related services it provides to the traveler (sometimes referred to as the "markup" "margin" or "facilitation fee"), which amount is combined with the rental rate; and (c) a combined amount for "tax recovery charges and service fees" that includes (i) an estimated amount to cover the state and local occupancy taxes that the hotel is required to collect and remit on the net rate ("tax recovery charges"); and (ii) additional amounts retained by the Defendant as compensation for its travel services. The hotel charges the traveler through Defendant for the net rate and tax, and then remits the applicable state and local taxes to the tax authorities.[3] (*Id.* at ¶ 35.)

Because the rental rate and applicable taxes are paid by the traveler in advance, at check-out, the traveler pays the hotel only for additional goods or services used during the stay. (*Id.*

---

[3] An explanation of the charges associated with the prepaid reservations is displayed on the website before the customer submits a reservation request. For example, Expedia's website explains that the nightly rate "is a combination of the pre-negotiated room rate for rooms reserved on your behalf by Expedia and the facilitation fee retained by Expedia to compensate us for our services." (Ex. A to SOF, MacDonald Decl., at Ex. A.)

¶ 42.)  The hotel typically receives the rental rate and applicable taxes from the traveler through the Defendants after check-out (although sometimes hotels collect payment at the time of booking or shortly thereafter).  (*Id.* ¶ 42.)

OTCs serve as intermediaries between travelers seeking hotel reservations and hotels looking to rent more rooms.  (*Id.* ¶ 18.)  In many respects, OTCs operate similarly to traditional brick and mortar travel agents.  Neither intermediary participates in the actual room rental transaction or controls whether the hotel actually makes the hotel room available to the traveler. (*See id.* ¶ 50, 30., 32.)

The Defendants' prepaid hotel reservations consist of two discrete financial transactions. The first is the facilitation transaction between the customer and the OTC.  This transaction requires a sophisticated website, housed on the Defendants' servers, none of which are located in the Village or the State of Illinois.  (SOF ¶ 32, 80.)  Thus, when a customer uses a Defendant's website to make a hotel reservation, the entire transaction occurs outside of the Village.  (*See id.* ¶¶ 76-82.)  The second transaction is the rental of accommodations by the hotel to the customer. This transaction requires a hotel to provide the actual accommodations that the consumer reserved.  (*Id.* ¶¶ 40-41, 51.)  If the hotel is in the Village, then the rental transaction occurs in the Village.

### 4.    Defendants' Hotel Contracts

Defendants secure the right to facilitate reservations at particular hotels by entering into agreements with the hotels that identify the various rights afforded to the hotels and the OTCs. (SOF ¶ 44.)  The hotel contracts establish that:

- Defendants acquire only the right to facilitate reservations, not to rent rooms.  The hotels do not sell or rent their rooms to Defendants for Defendants to then re-sell or re-let.  Indeed, the contracts typically acknowledge that nothing in the contract constitutes a sale or rental of rooms from the hotels to Defendants. (*Id.*¶¶ 47-48.)

- •    Defendants do not secure the right to use, possess, or even enter any specific hotel room; reservations are made in the name of the traveler, and only the traveler has the right to use the reservation. (*Id.* at ¶¶ 45, 51.)

## C.    The Enforcement History of the Hotel Tax

From 1972 until the Village sued the OTCs in 2009, everyone—including the Village itself—interpreted the Hotel Tax to apply only to a hotel. Only hotels have ever submitted the Village's tax form and paid the tax. (SOF ¶ 66.) Plaintiff has never sought to collect the Hotel Tax from any travel intermediary, including those that use the merchant model, such as travel agents, travel wholesalers, travel consolidators, travel packagers, or travel aggregators. (*Id.* ¶ 67.) And, tellingly, before filing suit, Plaintiff never served any Defendant with a deficiency notice, demand letter, notice of audit, or any other demand for payment of the Hotel Tax. (*Id.* ¶ 71.)

The Village admits its abrupt change of heart regarding Defendants was driven by a pitch from Plaintiff's lawyers. The person responsible for advising the Village on the applicability of the Hotel Tax, Peter Rosenthal (who testified as the Village's Rule 30(b)(6) designee), was well familiar with Defendants' business, having used Defendants' websites himself dozens of times over a span of more than ten years. (*Id.* ¶¶ 68-69.) Yet, Mr. Rosenthal never believed that Defendants were subject to Rosemont's Hotel Tax until he received what Village Financial Officer Donald Calmeyn described as lawyer-written "marketing material" from Plaintiff's counsel. (*Id.* at ¶¶ 69-70.) Mr. Rosenthal testified that these representations are what first prompted him to believe that the Village "was not receiving the full amount of the tax" that it was owed, and he candidly admitted that the "idea [to sue Defendants] came from counsel." (*Id.*)

## ARGUMENT

## I.    SUMMARY JUDGMENT STANDARD AND PRINCIPLES OF CONSTRUCTION

Summary judgment is proper when there is no genuine issue of material fact and the

moving party is entitled to judgment as a matter of law. FED R. CIV. P. 56. Judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

It is well established that when construing tax statutes, any ambiguity must be interpreted in favor of the taxpayer. The Illinois Supreme Court has "long held that 'taxing statutes are to be strictly construed. Their language is not to be extended or enlarged by implication, beyond [their] clear import. In cases of doubt they are construed most strongly against the government and in favor of the taxpayer.'" *Van's Material Co., Inc. v. Dep't of Revenue*, 131 Ill. 2d 196, 202 (1989) (*quoting Mahon v. Nudelman*, 377 Ill. 331, 336 (1941); s*ee also Chet's Vending Service, Inc. v. Dep't of Revenue*, 71 Ill. 2d 38, 42 (1978). Moreover, the Court should interpret the Hotel Tax to avoid double taxation. *See Bardon v. Nudelman,* 369 Ill. 214, 218 (1938) ("the legislative intent that there be double taxation is required to be plain and unmistakable"). The Court should also consider governing case law, statutes, and the United States and Illinois Constitutions, including limitations on the ability of a local government to reach outside its borders and collect taxes on interstate transactions. *E.g., DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).

## II.    BY ITS OWN TERMS, THE HOTEL TAX DOES NOT APPLY TO DEFENDANTS

The Hotel Tax imposes tax on the "privilege of renting a hotel or motel room within the Village of Rosemont" at a rate of "7% of the room rental rate (not including taxes or other non-room rental charges added to the bill)." Rosemont Code § 10-23(a). Although the ultimate liability for the tax is on the "rentor," the Ordinance imposes collection and remittance obligations on hotel "owners," defined as those who "hav[e] an ownership interest in or

conduct[] the operation of a hotel or motel room or receiv[e] the consideration for the rental of such hotel or motel room."  Rosemont Code §§ 10-22, 10-23(b).

     **A.**     **The Hotel Tax Does Not Apply to Defendants' Services.**

When a customer makes a hotel reservation through an OTC, the OTC charges the customer's credit card a single amount comprised of the rental rate set by the hotel for occupancy of the room, the amounts retained by Defendants their services, and the amount that hotel later remits to the Village in taxes.  (SOF ¶ 35.)  There is no dispute that the hotels have paid the Village all taxes on the rental rates paid for occupancy of their rooms.  (*Id.* ¶ 72.)  The disputed issue here is whether the compensation Defendants retain for their services is subject to the Hotel Tax.  (Dkt. No. 1 at ¶¶ 27-28, 35.)  Such services fall outside the tax base for at least two reasons.

*First*, the terms of the Ordinance itself provide that it taxes a percentage of the *room rental rate*, not the compensation Defendants receive for their services.  Rosemont Code § 10-23(a) (imposing a tax of "7% of the room rental rate (*not including taxes or other non-room rental charges added to the bill*)" (emphasis added).  Tellingly, other travel intermediaries using virtually the same business model have never been taxed on their compensation for services rendered.  (SOF ¶¶ 30, 67.)  The tax base cannot be lawfully expanded by implication.  The rule of strict construction of taxing statutes dictates that the term "room rental rate" cannot be stretched to include amounts charged by Defendants for their travel-related services.

*Second*, the hotel tax is a sales tax.  (SOF ¶ 64); *see also Commercial National Bank of Chicago v. City of Chicago*, 89 Ill. 2d 45, 55 (1982).  *Services* provided to customers—which, if taxed at all, must be reached through an occupation tax—cannot be taxed under a sales tax. *Id.* at 62 (an occupation tax is "one imposed upon the privilege of engaging in the business of selling services").  When the Hotel Tax was passed in 1972, the Village had no authority under Illinois

law to levy an occupation tax. (SOF ¶¶ 62-63.) And for almost thirty years, the provisions of the Ordinance relating to who has a duty to collect the Hotel Tax has not undergone any amendment. (*Id.* ¶ 74.) Accordingly, the purpose and intent behind the Ordinance is not to tax service providers such as the OTCs.

### B. Defendants Are Not Hotel "Owners" and Thus Have No Obligation To Collect the Hotel Tax.

Defendants are also entitled to summary judgment because they are not hotel "owners," either in the traditional sense or under the definition set forth in the Ordinance.

#### 1. The Defendants Do Not Fall Within the Ordinance's Definition of "Owner."

Defendants do not fit within the Ordinance's definition of a hotel "owner"—"any person having an ownership interest in or conducting the operation of a hotel or motel room or receiving the consideration for the rental of such hotel or motel room." Rosemont Code § 10-22.

*First*, Defendants do not "have an ownership interest in" any Village hotel, nor do they have any indicia of ownership. Defendants have no right to enter any hotel room, let alone a right to use or occupy a room. (SOF ¶¶ 32-33, 40, 47-49, 51.)

*Second*, Defendants do not "conduct the operation of a hotel or motel room." A hotel "operator" refers to a person who is in charge of the business operations of a hotel. MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2008) (defining "operator" as "one that operates a business"). A hotel operator's function is varied and extensive. It includes the many tasks of running a hotel: setting room rates and determining the distribution channels through which rooms can be reserved, recruiting and training employees, providing maintenance, security, housekeeping, and garbage removal, and handling check-in and check-out of guests. (SOF ¶¶ 12-14.) Defendants perform none of these functions. They do not manage the day-to-day operations of a hotel. (SOF ¶ 14, 47.)

*Third*, when travelers use Defendants' facilitation services, Defendants do not "receiv[e] the consideration for the rental of [a] hotel or motel room." Rental refers to the act of renting, which means to grant temporary possession or use of property or living quarters. *See* RANDOM HOUSE WEBSTER'S COLLEGE DICTIONARY 1116 (2d. Ed. 1999). The only entity receiving the consideration, or compensation, for "renting" (*i.e.* granting temporary possession of) a hotel room is the hotel itself, which is the only entity empowered to rent its rooms, and each hotel has already paid the Hotel Tax on such consideration. (SOF ¶ 72.) The rental rate is collected by the hotel through the OTC. The charge for the rental is merely passed through the Defendants. (SOF ¶¶ 32-35.) The amounts retained by Defendants are for their travel and reservation services and are distinct from the room rental at the hotel. Defendants therefore are not "the person receiving the consideration for the rental" of any hotel room in the Village.

### 2. Defendants Are Not Hotel "Owners" Under That Term's Common Meaning.

Even if Defendants should fall under the definition of a hotel "owner" by some tortured reading of the Ordinance, Illinois law establishes that Defendants cannot be taxed by definitional fiat. In Illinois, the fundamental character of a taxpayer's business, not an unrealistic statutory definition, determines whether it is subject to a particular tax. Defendants certainly do not fall within the common meaning of the Hotel Tax's target: hotel "owners." They do not have the right to possess, use, and convey a hotel. (SOF ¶¶ 48-49, 51); BLACK'S LAW DICTIONARY (9th ed. 2009) (defining "owner" as "[o]ne who has the right to possess, use, and convey something"). Therefore, they are exempted under the Illinois Constitution from paying the Hotel Tax.

The framers of the Illinois Constitution determined that tax authorities should "be bound by a standard of reasonableness" and that the Illinois Constitution should provide taxpayers with

protection from unreasonable tax schemes. *Searle Pharm., Inc. v. Dep't of Revenue*, 512 N.E.2d 1240, 1245 (Ill. 1987). That expectation is memorialized in the "Uniformity Clause" of the Illinois Constitution, which clarifies that a classification of taxpayers must be "reasonable." Ill. Const., art IX, § 2. "Reasonable" tax classifications cannot be either over- or under-inclusive. *See Cent. Television Serv. Inc. v. Isaacs*, 189 N.E.2d 333, 337 (Ill. 1963).

As part of this prohibition on over- and under-inclusiveness, the Supreme Court of Illinois has held that "it is constitutionally impermissible to define term[s] in a legislative enactment contrary to their common meaning." *Id.* (quotation marks omitted); *Northwestern Univ. v. City of Evanston,* 582 N.E.2d 1251, 1254 (Ill. App. Ct. 1991). That dictate has been consistently enforced by Illinois courts. For example, the Illinois Court of Appeals held that the City of Evanston could not expand its definition of "hotel" (and the concomitant application of the city's hotel-motel tax) to include entities that do not fall within the common meaning of "hotel." *See Northwestern Univ.*, 582 N.E.2d at 1257. Accordingly, the court then rejected Evanston's attempt to define a university building that primarily provided lodging to business students as a "hotel" under its hotel tax ordinance. Although the building could have fit under the ordinance's broad definition of "hotel," the court reasoned that the "nature of the services rendered" were "determinative for [tax] classification purposes" under the Uniformity Clause. *Id.; see also Central Television*, 189 N.E.2d at 335-37.

Similarly, in *Ohio Oil Co. v. Wright*,[4] the Supreme Court of Illinois held unconstitutional a legislative attempt to define the term "producer" as including those merely owning a royalty interest in oil-producing property. The tax was directed at those "engaged in the business of producing oil," which the court understood to have an ordinary and commonly understood

---

[4] 53 N.E.2d 966 (Ill. 1944), overruled in part on other grounds by *Thorpe v. Mahin*, 250 N.E.2d 633 (Ill. 1969). *Thorpe* overruled *Ohio Oil*'s holding that an "income tax" was a "property tax" and therefore subject to the constitutional limits on property taxes. *See Thorpe*, 250 N.E.2d at 636.

meaning of the business of actually separating oil from the ground, not merely owning a royalty. Even though the definitional language of the tax expressly extended to royalty owners, the court held that they could not constitutionally be subject to a tax on the "production" of oil.

The precedent set out above is dispositive here. Defendants are not hotel "owners"; they are in the business of providing travel services. And even if a hotel reservation did net Defendants some profit from their services, that is not enough to fundamentally change online travel intermediaries to hoteliers. *See Ohio Oil Co.*, 53 N.E. 2d at 971. Plaintiff cannot "legislate that to be a fact which everyone knows is not a fact" in order to expand its tax base. *Id.* at 972. *See Northwestern Univ.*, 582 N.E.2d at 1256-57.

**C. Plaintiff's Construction of the Hotel Tax Would Result in Double Taxation.**

Plaintiff's proposed interpretation of the Ordinance is also demonstrably flawed because it would result in double taxation. The Ordinance requires hotels to collect and remit Hotel Tax. Rosemont Code § 10-23. Plaintiff now wants Defendants to collect and remit taxes, but has not relieved the hotels from their tax collection obligation on the same hotel stay. Under the Village's interpretation, the same transaction (*i.e.*, the "rental" of a hotel room in the Village) is taxed twice—at the time of the prepaid reservation and later at the time of the hotel stay. Indeed, Plaintiff conceded that under its interpretation of the Ordinance, the Hotel Tax could apply to more than one "owner" for the same transaction. (SOF ¶ 73.) This results in impermissible double taxation without clear legislative intent to do so. *See Bardon*, 369 Ill. at 218.

**D. Plaintiff's Construction Is Inconsistent with the Ordinance's Enforcement History.**

The best evidence of the Ordinance's meaning is its enforcement history over several decades by city officials charged with its administration. *See Antrim v. Guyer & Calkins Co.*, 324 Ill. App. 641, 647-48 (2d Dist. 1945). Since the Hotel Tax was first passed in 1972, it has

only been applied to hotels—that is, until Plaintiff's counsel pitched the idea of a lawsuit to Village officials during troubled economic times. (SOF ¶¶ 66-70.) Then, abruptly and without filing any form of deficiency notice or the like, Plaintiff filed this lawsuit claiming it was owed millions of dollars in back taxes and penalties from Defendants, but not other travel service providers, some of whom have identical business models. (SOF ¶ 71.) Simply put, Defendants are advocating the very position that the Village has advanced for more than thirty years.

## III. DEFENDANTS' AFFIRMATIVE DEFENSES REQUIRE THE ENTRY OF JUDGMENT IN THEIR FAVOR

The Village's attempt to expand its local hotel tax to cover services performed out-of-state by out-of-state companies runs afoul of the Illinois and United States Constitutions. Further, the Village's application of the tax violates Defendants' Due Process and Equal Protection rights in several regards, as well as the Internet Tax Freedom Act. The Court should grant summary judgment to Defendants for these independent reasons as well.

### A. The Ordinance, As Interpreted by the Village, Violates the Illinois Constitution.

Plaintiff's attempt to impose the Hotel Tax on the Defendants' internet services—none of which are provided in the Village (SOF ¶¶ 76-77, 80-82)—is incompatible with the powers accorded to home rule municipalities, like the Village, by the Illinois Constitution. A home rule municipality has no authority to tax transactions that take place outside its jurisdiction. *See City of Carbondale v. Van Natta*, 61 Ill. 2d 483, 485 (Ill. 1975) (explaining that the Illinois Constitution of 1970 did not confer extraterritorial governmental powers on home rule units); *Comm'l Nat'l Bank of Chi.*, 89 Ill. 2d at 78 ("Chicago's imposition of tax liability or tax collection duties upon nonresident purchasers and sellers of services performed outside the City is incompatible with the intent of the drafters of our constitution"). Thus, the Village cannot constitutionally impose a tax collection duty on a person who does not transact business within

its borders. *Mr. B's Inc. v. City of Chi.*, 302 Ill. App. 3d 930, 939 (1st Dist. 1998) (stating that the "material fact" in deciding if the tax had extraterritorial effect was where the reseller transacted its business). Because none of the Defendants conduct any part of their travel services business in Rosemont (SOF ¶¶ 76-77, 80-82), application of the Hotel Tax to their services would violate the Illinois Constitution.

**B.** **The Ordinance, As Interpreted by the Village, Imposes a Tax That Is Prohibited by the Commerce Clause of the United States Constitution.**

The Commerce Clause grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes," U.S. Const. Art. I, § 8, cl.3, and has "long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on [interstate] commerce." *South-Central Timber Dev., Inc., v. Wunnicke,* 467 U.S. 82, 87 (1984). While the Commerce Clause is phrased as an affirmative grant of congressional power, it is well established that it contains a negative or "dormant" aspect that "denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Sys., Inc. v. Dep't of Envt'l Quality,* 511 U.S. 93, 98 (1994). In determining whether a state tax violates the dormant Commerce Clause, the U.S. Supreme Court has established a four-part test. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977). A tax must meet all four of the following requirements: the tax must [1] be "applied to an activity with a substantial nexus with the taxing State, [2] be "fairly apportioned," [3] "not discriminate against interstate commerce," and [4] be "fairly related to the services provided by the State." *Id*.

**1.** **There Is Insufficient Nexus To Impose the Hotel Room Tax Upon the OTCs And Their Services.**

The substantial nexus requirement is critical. In its absence, local jurisdictions could overwhelm and impede interstate commerce through tax compliance obligations. As the

Supreme Court explained in *Nat'l Bellas Hess, Inc. v. Dep't of Revenue of the State of Illinois*, 386 U.S. 753, 754-755 (1967), when holding unconstitutional an Illinois tax on a Missouri mail-order vendor who shipped personal property to its customers in Illinois, but who otherwise had no other contact with the State:

> And if the power of Illinois to impose use tax burdens upon National were upheld, the resulting impediments upon the free conduct of its interstate business would be neither imaginary nor remote. For if Illinois can impose such burdens, so can every other State, and so, indeed, can every municipality, every school district, and every other political subdivision throughout the Nation with the power to impose sales and use taxes. The many variations in rates of tax, in allowable exemptions, and in administrative and record-keeping requirements could entangle National's interstate business in a virtual welter of complicated obligations to local jurisdictions with no legitimate claim to impose 'a fair share of the cost of the local government.'

*Id*. at 759.

The Supreme Court has divided the substantial nexus requirement into two essential components: (1) nexus with the transaction; and (2) nexus with the taxpayer. Indeed, the Court has made clear that "by showing that particular transactions are dissociated from the local business and interstate in nature," an out-of-state defendant can avoid tax collection and remittance obligations, even if the defendant has some physical presence in the out-of-state jurisdiction. *Norton Co. v. Ill. Revenue Dep't.*, 340 U.S. 534, 537, (1951); *see also Am. Oil Co. v. Neill*, 380 U.S. 451, 454-55 (1965).

       **(a)**      **The Activity the Village Seeks to Tax Lacks a Transactional Nexus with the Village.**

The Constitutionally required substantial connection between the taxing state and the activity being taxed is referred to as transactional nexus. The U.S. Supreme Court explained the transactional nexus requirement in *Allied Signal, Inc. v. Director, Division of Taxation*, 504 U.S.

768 (1992), when the Court stated that "there must be a connection to the activity itself, rather than a connection only to the actor the State seeks to tax." *Id*. at 778.

For local taxes, the inquiry narrows to having substantial nexus with the specific jurisdiction. *United States v. Edmonson County*, Civil Action No. 1:00CV-155-R6, 2001 U.S. Dist. LEXIS 17660 (W.D. Ky. Oct. 1, 2001).[5] The Village seeks to apply the hotel room tax on two separate transactions—the prepaid reservation transaction between the customer and the OTC, and the room rental transaction for the use of the hotel room. The OTCs acknowledge that the Village has the requisite connection and nexus over the room rental transaction—upon which the Village already imposes and receives the Hotel Tax. However, the Village does not have the requisite connection to tax receipts earned by the OTCs for providing travel facilitation services from remote offices, call centers and computer servers to remote customers. The OTCs' travel facilitation services are all performed outside of Rosemont. (SOF ¶¶ 76-77, 80-82.)

> **(b)    Defendants Do Not Have Substantial Nexus With The Village.**

In addition to transactional nexus, tax authorities must also have substantial nexus with the taxpayer. *Quill Corp. v. North Dakota,* 504 U.S. 298, 317-318 (1992). An actual physical presence within the jurisdiction is required to create such nexus. *Nat'l Bellas Hess*, 386 U.S. 753 (1967). The "crucial factor" in assessing whether a Defendant has sufficient physical presence in the tax jurisdiction to constitute substantial nexus is whether the defendants' contacts involve

---

[5] In *Edmonton County,* the court analyzed the constitutionality of a license tax enacted by Edmonson County, Kentucky. 2001 U.S. Dist. LEXIS 17660 at *7. The court framed the substantial nexus issue as "whether [the taxpayer's] activities…provide a sufficient nexus between [the taxpayer] and the County to support the imposition upon [the taxpayer] of a tax[.]" Id. at *23. The company's only presence in Edmonson County was certain computer and related equipment that allowed customers to purchase tickets on-site, as well as the ticket stock required to print tickets. *Id*. at *29. While the company provided park personnel with training and replacement parts, the equipment was generally operated and maintained by the park's personnel. *Id*. at *6-7, *29. The court held that the taxpayer's activities within the County did not provide substantial nexus within the County and observed that "the County seeks to expand its taxing net well beyond its boundaries…[by] seek[ing] to tax sales or income generated from sales consummated in Maryland that involve consumers who live in other counties in Kentucky, other states, and quite possibly other countries." *Id*. at *29.

exploitation of the local consumer market. *See Miller Bros. Co. v. Maryland*, 347 U.S. 340, 347 (1954) (requiring "exploitation of the consumer market"); *Tyler Pipe Indus., Inc. v. Wash. State Dept' of Revenue*, 483 U.S. 232, 250 (1987) (finding nexus where nonresident manufacturer used resident sales representatives to call on customers, solicit and secure a large volume of sales). Thus, only contacts that exploit the local consumer market give rise to substantial nexus. *Id.*

Defendants have no physical presence in Rosemont related to exploiting the local consumer market or otherwise. Defendants are all headquartered outside of Illinois and they have no physical presence in the Village. They have no employees, offices, computer servers or call centers there. (SOF ¶¶ 76-82.) They do not rent, lease or sell hotel rooms, nor do they have any interest in other Village property. (*Id.*) They are out-of-state service providers that conduct business over the Internet using servers and equipment outside of Illinois. (*Id.*) They do not have the requisite nexus with the Village.

**2.      The Hotel Tax Violates the Fair Apportionment Requirement by Taxing Amounts Not Attributable to Economic Activity in the Village.**

As construed by the Village, the Ordinance violates the fair apportionment prong of *Complete Auto* because the imposition of the Hotel Tax would tax value not attributable to the services performed in Rosemont, thereby posing a real and significant threat of double taxation. The fair apportionment requirement seeks to avoid double taxation by "ensur[ing] that each State taxes only its fair share of an interstate transaction." *Goldberg v. Sweet*, 488 U.S. 252, 260-61 (1989). If one state taxes more than its share of the transaction and another state also taxes the same transaction, "the portion of value by which one State exceeded its fair share would be taxed again by a State properly laying claim to it." *Okla. State Tax Comm'n v. Jefferson Lines*, 514 U.S. 175, 184-85 (1995). The determination of what amount is a state's "fair share" is the "value that is fairly attributable to economic activity within the taxing State." *Id.* at 185.

To ensure that a State's tax does not reach "beyond that portion of value that is fairly attributable to economic activity within the taxing State," the U.S. Supreme Court thus requires that taxes have an "economic justification for the State's claim upon the value taxed." *Id.* Thus, the Supreme Court recognized the risk of multiple taxation when a state imposes a sales tax on services rendered across state lines. *Jefferson Lines* established that a service can only be taxed in one place, and that the state with the proper claim to sales tax on a service transaction is the state where an order for the services is accepted, where payment is made, and where a portion of the service is rendered. 514 U.S. 175 at 190.

In *Edmonson County*, 2001 U.S. Dist. LEXIS, discussed *supra*, a district court relied on *Jefferson Lines* to invalidate the tax imposed on an out-of-state ticket intermediary. The taxpayer facilitated ticket sales to Mammoth Cave through an "800" number and an online reservation service. *Id.* at *4. While Mammoth Cave was located in Edmonson County, Kentucky, the reservation facilitation company was located in Maryland, and all online, phone and mail ticket purchases were fulfilled by employees located in the company's Maryland offices. *Id.* at *3-4. According to the court, "taxing every transaction, regardless of whether it is consummated in the County, reaches far beyond that portion of value that is fairly attributable to economic activity within the County." *Id.* at *30; *see also In re CWM Chem. Servs., Inc.*, N.Y. Tax Appeals Tribunal DTA No. 818757, 2003 N.Y. Tax LEXIS 307 (Dec. 11, 2003).

As noted above, the Village seeks to impose tax on two transactions—the facilitation transaction between the Defendants and their customers and the later lodging transaction between the consumer and the hotel. Here, independent third parties have negotiated an arms-length division of the total proceeds based on distinct services provided by each. The

marketplace has determined the fair share of the charge for the rental of the hotel room versus the OTCs' travel and reservation services. This division of revenues should be respected.

The OTCs' travel services are performed over the Internet. All the OTCs' websites and servers are located outside the Village. All the activity involved in such services takes place outside Rosemont. Since the contract between the customer and a Defendant has been made outside Rosemont, and the intermediary service is performed and paid outside the Village, the amounts received by the OTCs for their facilitation services are not attributable to economic activities occurring within the Village. The Village's attempt to impose the tax on the OTCs' compensation thus creates an unfairly apportioned tax as applied to the OTCs and poses a significant risk of double taxation. *See supra* Section II(C).

### 3. The Hotel Room Tax Discriminates Against Interstate Commerce.

To pass constitutional muster, a tax cannot discriminate against interstate commerce. *Complete Auto*, 430 U.S. at 285. Attempts to extend the Hotel Tax to the out-of-state OTCs while not similarly seeking to impose and recover the Hotel Tax from travel intermediaries using the same business model within Illinois discriminates against interstate commerce in favor of commerce conducted solely within Illinois. *Best & Co. Inc. v. Maxwell*, 311 US 454, 455-56 (1940) ("The Commerce Clause forbids discrimination, whether forthright or ingenious. In each case it is our duty to determine whether the statute under attack, whatever its name may be, will in its practical operation work discrimination against interstate commerce."). The Ordinance is unconstitutional for this reason as well.

### 4. As Applied, the Hotel Tax Is Not Fairly Related to the Services, If Any, the Village Provides to Defendants.

As construed by the Village, the Hotel Tax violates the fourth prong of the *Complete Auto* test because the tax is not fairly related to the "presence and activities" of the OTCs in

Rosemont. *Goldberg*, 488 U.S. at 266. The purpose of this prong "is to ensure that a State's tax burden is not placed upon persons who do not benefit from services provided by the State." *Id.* at 266-67. The imposition of the tax is very burdensome in relation to any Village services the OTCs might enjoy.

When a company is not present within a tax jurisdiction and the transaction in question does not occur within that tax jurisdiction, a tax on the company or its activities cannot pass constitutional muster under the "fair relationship" prong of the *Complete Auto* test. *See Edmonson County,* 2001 U.S. Dist. LEXIS 17660 at *30-31. Many states have interpreted the fairly related requirement to include an analysis of the benefits or services a jurisdiction renders in exchange for its imposition of tax. These services are most often stated as police and fire protection, the use of public roads and mass transit, and "other advantages of a civilized society." *See, e.g., Tenn. Gas Pipeline Co. v. Marx,* 594 So. 2d 615, 618 (Miss. 1992).

Under Defendants' interpretation of the Ordinance, the Hotel Tax is based on the amounts received by hotel owners and operators for their provision of accommodations. Those amounts represent the owners' and operators' valuation of the services they provide and serve as a fair measure of the value of the service provided by the state, county and city for a rental of accommodations. The provision of police, fire protection, and paved sidewalks are for the benefit of the hotel's guests.

By contrast, under the Village's interpretation, Defendants bear the burden of the Hotel Tax, but do not use any Village-provided services to facilitate reservations. The Village therefore has no claim to tax the value of the OTCs' services and applying the tax to Defendants violates the "fairly related" requirement of the Commerce Clause.

**C.** **The Ordinance, As Interpreted By The Village, Creates A "Discriminatory Tax" Prohibited By The Internet Tax Freedom Act.**

The Plaintiff's construction of the Ordinance also must be rejected because it creates a discriminatory tax prohibited by the Internet Tax Freedom Act ("ITFA"). The ITFA preempts States and their political subdivisions from imposing discriminatory taxes on electronic commerce, and prohibits "discriminatory taxes on electronic commerce." Pub. L. 105-277, as amended, § 1101(a)(2) (codified at 47 U.S.C. § 151 note). A tax on electronic commerce is deemed to be a "discriminatory tax" if the tax:

> (i) is not generally imposed and legally collectible by such State or political subdivision on transactions involving similar property, goods, services, or information accomplished through other means;
>
> (ii) is not generally imposed and legally collectible at the same rate by such State or such political subdivision on transactions involving similar property, goods, services or information accomplished through other means…; [or]
>
> (iii) imposes an obligation to collect or pay the tax on a different person or entity than in the case of transactions involving similar property, goods, services, or information accomplished through other means….

ITFA § 1105(2)(A). ITFA applies to taxes that are facially neutral but, like the Hotel Tax here, applied in a discriminatory manner. S. Rep. No. 105-184, at 4 (1998) (comment from a sponsor of ITFA); *see also CSX Transp., Inc. v. Ala. Dep't. of Revenue.*, --- U.S. --- (2011), 2011 WL 588790 at *5-6 (Feb. 22, 2011) (holding that exempting certain parties from facially neutral tax can constitute discrimination under the Railroad Revitalization and Regulatory Reform Act).

**1.** **The Hotel Tax Is Not Generally Imposed on Similar Transactions.**

The Village has demonstrated no effort to enforce its Ordinance—through a lawsuit or otherwise—against any travel intermediaries using the merchant model besides the OTCs. (SOF ¶ 67.) Yet, traditional travel agents, tour operators and consolidators perform many of the same

functions as the OTCs and sometimes use the same business models as OTCs. (*Id.* at ¶ 30.)The Village's application of the Hotel Tax thus treats the OTCs' online travel service business differently than traditional travel service businesses not conducted over the Internet. Because the Village is attempting to subject the OTCs to the Hotel Tax while excluding providers of similar property, goods, services or information services delivered through other means, the Village's application of the tax is impermissibly discriminatory. ITFA § 1105(2)(A)(i).

### 2. The Village Does Not Impose The Hotel Tax On OTCs At The Same Effective Rate That Is Applied To Other Travel Intermediaries.

The Village claims it is entitled to impose the Hotel Tax on OTCs using a broader tax base than is used for offline companies that provide travel services. This causes electronic commerce transactions to be taxed at a higher effective tax rate when compared to traditional commerce. For example, under the Village's interpretation of the Ordinance, if a traveler books a room for $120 using an OTC's services, whereby the hotel operator receives $100 for the room rental and the OTC retains $20 for its services, the Village would impose the tax on $120. By comparison, if a different intermediary were to book the hotel room for the traveler for $100 and retain $20 for its services, the Village would only impose the tax on the $100 paid to the hotel operator. The Ordinance, as applied by the Village, is thus a discriminatory tax prohibited by the ITFA. § 1105(2)(A)(ii).

### 3. The Village Requires Online Travel Companies To Collect And/Or Pay the Tax But Does Not Require Non-Online, Traditional Travel Intermediaries To Collect And/Or Pay the Tax.

The services the OTCs provide are substantially the same as the services of other travel intermediaries who do not operate over the Internet. (SOF ¶¶ 27, 30, 50.) To the extent that Defendants are required to collect and remit the tax, while other travel intermediaries who do not

operate over the Internet but use the merchant model are exempted from collecting and remitting the tax, the Ordinance is impermissibly discriminatory. ITFA § 1105(2)(A)(iii).

### D. Applying The Hotel Tax to Defendants Violates Defendants' Due Process And Equal Protection Rights.

Applying the Ordinance to the Defendants violates their due process and equal protection rights under the United States and Illinois Constitutions. U.S. CONST. amend. XIV, § 1; Ill. Const. art. I, § 2. The Hotel Tax is void for vagueness and lacks a reasonable basis both for classifying the OTCs differently than other intermediaries using the merchant model and for classifying the OTCs as something they clearly are not, namely, "owners" of hotels.

### 1. The Hotel Tax Is Unconstitutionally Vague.

The Ordinance is void for vagueness, and therefore violates due process. The Fourteenth Amendment to the United States Constitution protects citizens from vague statutes. A tax is unconstitutionally vague when it "lacks terms susceptible of objective measurement" and "when persons of common intelligence must necessarily guess at its meaning. *U.S.G. Italian Marketcaffe, L.L.C. v. City of Chicago*, 332 Ill. App. 3d 1008, 1018 (1st Dist. 2002).

The Court need look no further than this lawsuit to see that there are serious questions as to whether the Ordinance covers Defendants' services. Plaintiffs now seek millions of dollars in back taxes, as well as interest and penalties. (Dkt. No. 1.) Yet, the Ordinance's expansive definition of a hotel "owner" makes no sense and fails to give the OTCs fair notice that their services are taxed, particularly where the Ordinance expressly taxes the "room rental rate" paid by travelers. Rosemont Code § 10-23(a). Indeed, even the Village itself did not interpret the Ordinance as applying to Defendants until recently prompted by its outside counsel to do so. (SOF ¶¶ 68-70.) The ambiguous wording of the Ordinance prevented the OTCs from ascertaining the amounts on which tax is imposed—the very definition of vagueness.

###### 2. The Hotel Tax Lacks a Rational Basis For Classifications Subjecting The Defendants To The Tax.

A tax classification must have a rational basis. *See Mich. Millers Mut. Fire Ins. Co. v. McDonough*, 358 Ill. 575, 584-85 (1934) (collecting cases). As observed by the Supreme Court, "[e]qual protection does not require identity of treatment. It only requires that classification rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary." *Walters v. City of St. Louis*, 347 U.S. 231, 237 (1954).

The Ordinance classifies the Defendants as hotel "owners" but does not similarly classify brick-and-mortar travel intermediaries as such. Both types of businesses act as intermediaries between hotels and hotel consumers. Likewise, both are compensated for the travel services they provide. (SOF ¶¶ 30.) Yet according to the Village, only the OTCs' compensation is subject to the Hotel Tax. This distinction is arbitrary. Moreover, the classification simply does not describe the nature of the OTCs or their business model, and thus there is no rational basis for the classification.

### CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment should be GRANTED.

Dated: March 15, 2011

Respectfully submitted,

/s/ Mark P. Rotatori

Mark P. Rotatori (06225962)
  Email: mprotatori@jonesday.com
Nicole Massey (6286386)
  Email: nmassey@jonesday.com
JONES DAY
77 West Wacker
Chicago, IL 60601-1692
Telephone:    (312) 782-3939
Facsimile:    (312) 782-8585

*Attorneys for Defendants Expedia, Inc.,*
*Hotels.com, L.P., and Hotwire, Inc.*

/s/ Justin L. Heather

Randolph K. Herndon (admitted *pro hac vice*)
Justin L. Heather
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
155 North Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone:    (312) 407-0700
Facsimile:    (312) 407-0411

*Attorneys for Defendants priceline.com*
*Incorporated and Travelweb LLC*

/s/ Brian Stagner

Brian S. Stagner (admitted *pro hac vice*)
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102

Luke DeGrand
Teresa Frisbie
Tracey L. Wolfe
DEGRAND & WOLFE, P.C.
20 S. Clark St., Suite 2620
Chicago, IL 60603

*Attorneys for Defendants Site59.com, LLC*
*and Travelocity.com L.P.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on March 15, 2011, a copy of the foregoing

**Defendants' Motion for Summary Judgment and Memorandum of Law In Support**

**Thereof** was served using the Court's CM/ECF system, which will send electronic notification

to the following attorneys of record at the e-mail addresses on file with the Court:

Paul M. Weiss
Jeffrey A. Leon
George Lang
Richard J. Burke
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602

Steve W. Berman
Karl Barth
Andrew Volk
Christopher A. O'Hara
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101

Elizabeth A. Fegan
Daniel J. Kurowski
HAGENS BERMAN SOBOL SHAPIRO LLP
1144 West Lake Street, Suite 400
Oak Park, IL 60301-1043
**Attorneys for Plaintiff**

Albert L. Hogan III
Justin Heather
SKADDEN ARPS SLATE MEAGHER & FLOM, LLP
155 N. Wacker Dr.
Chicago, IL 60606

Randolph Herndon
Karen Valihura
SKADDEN ARPS SLATE MEAGHER & FLOM, LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899

Darrel J. Hieber
SKADDEN ARPS SLATE MEAGHER & FLOM, LLP
300 S. Grand Avenue, Suite 3400
Los Angeles, CA 90071
**Attorneys for priceline.com, Incorporated, Travelweb, LLC**

Luke DeGrand
Teresa Frisbie
Tracey L. Wolfe
DEGRAND & WOLFE, P.C.
20 S. Clark St., Suite 2620
Chicago, IL 60603

Brian S. Stagner
Stacy Russell
Scott R. Wiehle
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
**Attorneys for Site59.com, LLC and Travelocity.com, L.P.**

___s/ Nicole Massey_____
Nicole Massey