**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

THE VILLAGE OF ROSEMONT,
ILLINOIS,

        Plaintiff,

  v.

PRICELINE.COM INCORPORATED;
TRAVELWEB LLC; TRAVELOCITY.COM
LP; SITE59.COM LLC; EXPEDIA, INC.;
HOTELS.COM, L.P.; and HOTWIRE, INC.,

        Defendants.

Civil Action No. 09 CV 04438

**Judge Guzman
Magistrate Judge Nolan**

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT AND
<u>REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

<strong>Page</strong>

I.    PLAINTIFF'S SUMMARY JUDGMENT MOTION SHOULD BE DENIED .............. 1

    A.    The Ordinance's Plain Language Does Not Apply to Defendants ....................... 1

        1.    Hotels Rent While Defendants Provide Reservation Services ................ 2

        2.    Defendants Are Not Hotel "Owners." ..................................... 4

    B.    Plaintiff's Interpretation of the Ordinance Would Violate the Uniformity Clause of the Illinois Constitution .......................... 9

    C.    Plaintiff's Construction of the Hotel Tax Would Result in Double Taxation ............................................................... 12

II.    AT BEST, PLAINTIFF CAN SHOW THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED ON THE GROUND THAT THE ORDINANCE IS AMBIGUOUS AND VAGUE................................ 13

III.    DEFENDANTS' AFFIRMATIVE DEFENSES REQUIRE THE ENTRY OF JUDGMENT IN THEIR FAVOR ...................................... 15

    A.    The Ordinance, As Interpreted by the Village, Violates the Illinois Constitution.......................................................... 15

    B.    The Hotel Tax Violates the United States Constitution's Commerce Clause................................................................ 16

        1.    There Is Insufficient Nexus To Impose the Hotel Tax upon Defendants and Their Transactions ........................................ 17

        2.    Under Plaintiff's Interpretation, the Hotel Tax Is Not Fairly Apportioned ................................................. 20

        3.    Under Plaintiff's Interpretation, the Hotel Tax Discriminates Against Interstate Commerce................................. 21

        4.    Under Plaintiff's Interpretation, the Hotel Tax Is Not Fairly Related to Services Provided by Rosemont ........................... 22

    C.    Plaintiff's Application of the Hotel Tax Violates ITFA ..................... 23

    D.    Plaintiff's Application of the Hotel Tax Violates Due Process And Equal Protection ............................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page**

CASES

*Am. River Transp. Co. v. Bower*,
   351 Ill. App. 3d 208 (Ill. App. Ct. 2d Dist. 2004)..................................................22

*Bordon v. Nudelman*,
   369 Ill. 214 (1938) ...................................................................................................13

*Bowling Green v. Hotels.com*,
   No. 09-CL-00409 (Circuit Court, Warren County, Kentucky Apr. 8, 2010) ..........14

*Brown's Furniture, Inc. v. Wagner*,
   665 N.E.2d 795 (Ill. 1996)........................................................................................25

*Central Television Servs., Inc. v. Isaacs*,
   189 N.W.2d 333 (Ill. 1963)..................................................................................10, 11

*Chisholm v. Cancer Treatment Ctrs. Of Am.*,
   2002 WL 31085090 (N.D. Ill. Sept. 18, 2002) .........................................................4

*Ciechon v. City of Chicago*,
   686 F. 2d 511 (7th Cir. 1982) ..................................................................................25

*City of Birmingham, et al. v. Orbitz, Inc.*,
   CV 09-3607 JSV, Mar. 24, 2011 Order at 2 (Jefferson County Cir. Ct. 2011) ....8, 9

*City of Carbondale v. Van Natta*,
   61 Ill. 2d 483 (Ill. 1975)...........................................................................................15

*City of Chicago v. StubHub!, Inc.*,
   624 F.3d 363 (7th Cir. 2010) ..............................................................................23, 24

*City of Houston & Harris Cnty.-Houston Sports Auth. v. Hotels.com, L.P., et al.*,
   No. 2007-13227 (270th Dist. Ct., Harris County, Tex. Jan. 19, 2010)....................14

*City of Phila. v. City of Phila. Tax Review Bd.*,
   No. 00764 (Pa. Ct. Common Pleas, 1st Dist. Jan. 14, 2011) ...........................5, 8, 14

*Cnty. of Lawrence, Pa. v. Hotels.com, L.P.*
   No. 11846 of 2009 (Pa. Ct. Common Pleas, 53rd Dist., Oct. 25, 2010).................14

*Comm'l Nat'l Bank of Chi. v. City of Chicago*,
   89 Ill. 2d 45 (1982) ..................................................................................................15

*Communications & Cable of Chicago, Inc. v. City of Chicago*,
  668 N.E. 2d 1032 (Ill. App. 3d 1996) ....................................................................25

*Creative Trade Group v. Int'l Trade Alliance*,
  2009 WL 3713345 (N.D. Ill. Nov. 4, 2009) ...........................................................4

*CSX Transp., Inc. v. Alabama Dept. of Rev.*,
  131 S.Ct. 1101 (2011).............................................................................................22

*Expedia v. City of Anaheim*,
  Case No. JCCP 4472, slip op. (Cal. Sup. Ct. Feb. 1, 2010)...................................12

*Gallup v. Hotels.com, L.P.*,
  No. 07-cv-00644 (D.N.M. Mar. 1, 2010)................................................................14

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972)................................................................................................25

*Irwin Indus. Tool Co. v. Illinois Dep't. of Revenue*,
  238 Ill. 2d 332 (2010) ............................................................................................18

*Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*,
  590 F.3d 381 (6th Cir. 2009) .............................................................................12, 14

*Matthews v. Homecoming Financial Network*,
  2006 WL 2088194 (N.D. Ill. July 26, 2006)............................................................4

*Miller Bros. Co. v. Maryland*,
  347 U.S. 340 (1954)................................................................................................18

*Mulligan v. Dunne*,
  61 Ill.2d 544 (1975) ...............................................................................................16

*Northwestern Univ. v. City of Evanston*,
  582 N.E.2d 1251 (Ill. App. Ct. 1991) ....................................................................10

*Okla. Tax Comm'n v. Jefferson Lines, Inc.*,
  514 U.S. 175 (1995)...........................................................................................20, 21

*Orange v. Hotels.com, L.P.*,
  No. 06-cv-413, 2007 U.S. Dist. LEXIS 70482 (E.D. Tex. Sept. 21, 2007)............14

*Paciga v. Prop. Tax Appeal Bd.*,
  322 Ill. App. 3d 157 (2d Dist. 2001) ......................................................................13

*Pitt Cnty. v. Hotels.com, L.P,*
  553 F.3d 308 (4th Cir. 2009) .........................................................................12, 13, 14

*Quill Corp. v. North Dakota*,
   504 U.S. 298 (1992)..............................................................................18, 19, 20

*Rockgate Mgmt. Co. v. CGH Ins., Inc.*,
   88 P.3d 798 (Kan. Ct. App. 2004) ........................................................................9

*Santa Monica v. Expedia, Inc.*,
   No. JCCP 4472 (Superior Court of Los Angeles County, California Mar. 16, 2011)............13

*Scripto, Inc. v. Carson*,
   362 U.S. 207 (1960)..............................................................................................19

*Seigles Inc. v. City of St. Charles*,
   365 Ill.App.3d 431 (2nd Dist. 2006)......................................................................16

*St. Tammany Parish Tax Collector v. Barnesandnoble.com*,
   481 F. Supp. 2d 575 (E.D. La. 2007) ..............................................................18, 19

*Stangle v. Ala Carte Enter., Inc.*,
   2010 WL 5157376 (N.D. Ill. Dec. 13, 2010) ..........................................................4

*Stenberg v. Carhart*,
   530 U.S. 914 (2000)..............................................................................................11

*Tyler Pipe Indus., Inc. v. Wash. State Dep't of Revenue*,
   483 U.S. 232 (1987)..............................................................................................19

*United States v. Edmonson County*,
   No. 1:00-cv-155-R6, 2001 U.S. Dist. LEXIS 17660 (W.D. Ky. Oct. 1, 2001).......................17

*Van's Material Co., Inc. v. Dep't of Rev.*,
   131 Ill. 2d 196 (1989) ......................................................................................1, 13

**STATUTES**

65 ILCS 5/8-3-14 ............................................................................................................4

Rosemont Code §§ 10-22, 10-23 ........................................................................1, 3, 5

**OTHER AUTHORITIES**

MIRRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2008)....................................5

RANDOM HOUSE WEBSTER'S COLLEGE DICTIONARY 1116 (2d ed. 1999) ......................2

## INTRODUCTION

Plaintiff's Cross Motion for Summary Judgment must be denied unless the *only* reasonable interpretation of the Hotel Tax is that it applies to Defendants. *Van's Material Co., Inc. v. Dep't of Rev.*, 131 Ill. 2d 196, 202 (1989). Plaintiff cannot factually dispute (1) that hotels, not Defendants, possess hotel rooms and have full discretion on whether they will rent the room to a guest in exchange for payment; (2) that hotels, not Defendants, set the "net rate" that hotels will receive for occupancy of the rooms that the hotels possess; and (3) that while Defendants provide reservation services to their customers and as compensation retain amounts charged for their services, those amounts are unrelated to the hotel's decision to furnish hotel rooms to a guest. Thus, the undisputed facts establish that the compensation Defendants retain for their services is not part of the "room rental rate," and even if it was, Defendants would not be hotel "owners" with responsibility to collect the Hotel Tax. Rosemont Code §§ 10-22, 10-23. Plaintiff's statutory interpretation is simply too strained to meet its hefty burden, especially considering that the Ordinance is to be strictly construed against it.

Moreover, Plaintiff cannot wish away Defendants' defenses under the Illinois Constitution, the United States Constitution, and the Internet Tax Freedom Act. These defenses warrant granting summary judgment in Defendants' favor as well.

## ARGUMENT

## I. PLAINTIFF'S SUMMARY JUDGMENT MOTION SHOULD BE DENIED

### A. The Ordinance's Plain Language Does Not Apply to Defendants.

The Ordinance provides that the Hotel Tax will be charged at 7% of the "room rental rate" and collected and remitted by hotel "owners," defined as those who "hav[e] an ownership interest in or conduct[] the operation of a hotel or motel room or receiv[e] the consideration for the rental of such hotel or motel room." Rosemont Code §§ 10-22-10-23. This language shows

that the tax does not apply to the amounts Defendants retain for their services, and that Defendants are not required to collect the Hotel Tax.

### 1.    Hotels Rent While Defendants Provide Reservation Services.

The Hotel Tax imposes tax on the "privilege of *renting* a hotel or motel room within the Village of Rosemont" at a rate of "7% of the room *rental* rate (*not including* taxes or *other non-room rental charges added to the bill*)." § 10-23(a) (emphasis added). Plaintiff claims that the *only reasonable interpretation of the statute* is that the amounts Defendants receive as compensation for their reservation services are part of the taxable "room rental rate." But Plaintiff does not dispute that hotels are the parties that actually grant temporary possession of hotel rooms to Defendants' customers, nor does it dispute that hotels do not receive a penny of Defendants' compensation for their reservation services. (Response to Defendants' Statement of Facts ("Resp. to Defs.' SOF") at ¶¶ 40, 42, 49.) Thus, Plaintiff concedes that the net rate is the only sum paid as consideration to the only entity that actually grants Defendants' customers access to hotel rooms.

That simple fact is dispositive in this case. The "room rental rate" is the rate received for "rental," or the "grant[ of] temporary possession or use of property or living quarters." RANDOM HOUSE WEBSTER'S COLLEGE DICTIONARY 1116 (2d ed. 1999). Hotels only receive the net rate and in exchange for that net rate, they rent hotel rooms to customers. Thus, the sums Defendants retain for their services—the only sums at issue in this lawsuit—are at best "non-room rental charges added to the bill." § 10-23(a). That category of charges is *specifically excluded* from the Hotel Tax by the Ordinance itself.

Yet, Plaintiff insists that Defendants' compensation *must be* part of the taxable "room rental rate" because such amounts are not separately itemized on a customer's bill. (Plf.'s Resp.

at 9-11.)[1]  But that contention defies logic.  First, the net rate is the amount a hotel indisputably

charges to grant temporary possession of its rooms (*i.e.* the "rental rate") regardless of whether

customers perceive it otherwise.  (Resp. to Defs.' SOF at ¶ 32.)  Second, Plaintiff does not

dispute that customers are informed and agree before booking that some portion of the sum they

pay for any hotel stay booked through Defendants' websites will be retained by Defendants as

service fees.  (*Id.* at ¶¶ 38-39.)  Therefore, Plaintiff has no basis to suggest that customers do not

agree and expect to pay Defendants any compensation beyond the amount retained by a hotel for

room rental.  Third, regardless of the precise manner in which Defendants itemize their service

fees to customers, the record reflects that all parties are aware that a certain amount of money

will go to hotels for "rental" and a certain amount will be retained by Defendants as

compensation for their services.  (*Id.*)  Plaintiff is only permitted to collect the Hotel Tax on the

former category, and it has already done so from hotels.  (*Id.* at ¶ 43.)

     Fourth, as Plaintiff admits,[2] the Hotel Tax is a Sales Tax—a type of tax that does not

---

[1]  Plaintiff repeatedly asserts that Defendants have violated Rosemont Code § 10-23(d), which requires the Hotel Tax to be itemized on an invoice.  (Plf.'s Br. at 8, 9, 10.)  However, that section only applies to those "*required* to collect the tax levied by" the Ordinance, and as explained in Defendants' Motion for Summary Judgment, Defendants are not required to collect tax because they do not receive the room rental.  (Defs.' Mot. at 8-13.)  The room rental obviously does not occur until after the guest checks in to the hotel.  Otherwise, tax would be due at the time of the reservation even though it is not then known whether the taxable rental transaction will occur.  Moreover, Plaintiff does not explain how any violation of 10-23(d) would be relevant to the issue in this lawsuit, which is whether Defendants must pay the Hotel Tax on their compensation.  Indeed, the business reason for combining taxes with the mark-up facilitation fee in a single line item on Defendants' invoices is plainly apparent.  If Defendants revealed the precise amount they charged customers for taxes, the "net rates" they carefully negotiated with the hotels could be revealed through simple math.  Those rates are highly confidential, as this Court's sealing orders reflect.  (*See,* Dkt. Nos. 96 (Order on Defendants' Motion to File Documents Under Seal); Dkt. No. 94 (Defendants' Motion to File Documents Under Seal); Dkt. No. 64, 65 (Order Granting Defendants' Motion for Protective Order); Dkt. No. 62 (Defendants' Motion for Entry of Protective Order).)

[2] Plaintiff now seeks to back away from the conclusive admissions it made by failing to respond to Defendants' Second Requests for Admission within thirty days.  (Defs.' SOF at p. 3, n.1; Resp. to Defs.' SOF at ¶ 14.)  Plaintiff argues that the Court should allow Plaintiff to rescind its admissions *without ever filing a motion to withdraw and after Defendants have already filed their summary judgment brief* because doing so would cause "no prejudice" to Defendants.  (Resp. to Defs.' SOF at ¶ 14.)

apply to services, which are taxed through an occupation tax.  That fact alone demonstrates that payments for Defendants' services are not part of the "room rental rate."

Finally, notwithstanding Plaintiff's admission, the Village Board of Trustees could not have intended the Hotel Tax to be an occupation tax applicable to the amounts Defendants charge for their reservation services.  When the Ordinance was enacted in 1972, the Village had no legal authority to levy occupation taxes.  Although Plaintiff claims that the Village had that authority in 1972 (Plf.'s Br. at 11, n.12), it is flat out wrong.  That is because the statute that Plaintiff claims gave it the authority to tax hoteliers, 65 ILCS 5/8-3-14, was not effective until 1976—four years after the Ordinance was enacted.  (*See* Ex. A (Public Act 79-580 (1975).)  Even then, the statute only granted such taxing authority to municipalities with a population of over 25,000.  (*Id.*)  Rosemont's population is less than 1/5 of that threshold.  VILLAGE OF ROSEMONT, http://www.rosemont.com/village_of_rosemont.php (last viewed 4/25/11).

## 2.     Defendants Are Not Hotel "Owners."

---

(continued…)

Plaintiff agrees that it has the burden to show that Defendants suffered no prejudice, but Plaintiff cannot make that showing here.  Defendants have, with Plaintiff's knowledge, relied on these admissions up to and including summary judgment briefing, causing significant prejudice if Plaintiff were allowed to suddenly reverse course.  *See, e.g., Stangle v. Ala Carte Enter., Inc.*, 2010 WL 5157376 at *3 (N.D. Ill. Dec. 13, 2010) (allowing party to rely on requests for admissions without moving to withdraw can constitute prejudice).  Moreover, Defendants served their Second Requests for Admission near the end of fact discovery, when narrowing the issues for depositions.  If Plaintiff had timely answered those requests, Defendants could have served follow up discovery in time for the September 30, 2010 fact discovery cutoff.  However, Plaintiff did not serve its belated response until August 31, 2010, less than 30 days before the discovery cutoff.  Thus, in contrast to Plaintiff's authority, Defendants would be severely prejudiced if Plaintiff were permitted to withdraw their admissions in that they would be precluded from obtaining timely follow up discovery on the tardily denied issues.  *Compare  Creative Trade Group v. Int'l Trade Alliance*, 2009 WL 3713345 (N.D. Ill. Nov. 4, 2009) (noting that plaintiff was not prejudiced because it had "plenty of time . . . to correct any harm it might have suffered" by defendant's withdrawal of admissions) and *Chisholm v. Cancer Treatment Ctrs. Of Am.*, 2002 WL 31085090 (N.D. Ill. Sept. 18, 2002) (late denial of requests for admission excused with five months of discovery remaining) *with Matthews v. Homecoming Financial Network*, 2006 WL 2088194 (N.D. Ill. July 26, 2006) (deeming late requests admitted where two months of discovery remained because withdrawing admissions would necessarily change opponent's discovery strategy).

Only hotel "owners," defined as those who "hav[e] an ownership interest in or conduct[] the operation of a hotel or motel room or receiv[e] the consideration for the rental of such hotel or motel room," have any duty to collect and remit the Hotel Tax. Rosemont Code §§ 10-22-10-23. As Defendants previously demonstrated, they do not fall within the definition of hotel "owners" and thus have no obligation to collect the Hotel Tax. (Defs.' Mot. at 10-13.) But Plaintiff seeks to avoid the language of its own Ordinance. Plaintiff claims that because Defendants actually do charge customers for the Hotel Tax, in addition to the room rental rate and amounts retained for their compensation, there is no dispute that Defendants are responsible to collect the Hotel Tax. (Plf.'s Br. at 8.) Plaintiff is sadly mistaken. Defendants have always disputed that they are required to collect the Hotel Tax because they are not hotel "owners" as defined in the Ordinance. And Defendants' agreement to collect funds to cover a hotel's payment of Hotel Tax on their room rentals does not transform Defendants into hotel "owners" with tax collection obligations.

> (a) **Defendants do not have an ownership interest in or operate a hotel.**

Plaintiff barely attempts to even argue that Defendants are hotel "owners" or "operators." Instead, Plaintiff claims that certain cherry-picked SEC documents in which the Defendants used the terms "inventory," "purchase" "or "resell" to describe their business model establish that Defendants are in fact hotel owners and/or operators. (Plf.'s Br. at 3-5.)[3] Regardless of

---

[3] These quotes from SEC filings are not only inaccurate and out-of-context, but also patently irrelevant. Even if Defendants did literally "purchase" and "re-sell" rooms, as Plaintiff suggests, the re-sale would not be a "rental" and the rate charged would not be a taxable "rental rate." *Compare* MIRRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2008) ("rent" is "to grant the possession and enjoyment of in exchange for rent") *with* MIRRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2008) ("sell" means "to give up (property) to another for something of value (as money)"). Indeed, it is Plaintiff's attorneys, not Plaintiff, who find Defendants' SEC filings significant. Plaintiff's 30(b)(6) witness had never even read Defendants' SEC filings, and conceded that the manner in which Defendants conduct their business, not any description in old SEC filings, is pertinent to determining whether the Hotel Tax applies to Defendants. (Defs.' Stmnt. of Add'l Facts at ¶ 6.) Courts also agree. *See City of*

- 5 -

Plaintiff's characterization of Defendants' SEC filings, Plaintiff cannot dispute that:

- Hotels, not Defendants, set the "net rate" for which they are willing to rent their rooms (*See* Resp. to Defs.' SOF at ¶ 32);

- Before making a reservation, Defendants must confirm that the "hotel is extending net rate availability to the particular Defendant at that time" (*id.* ¶ 32);

- During the process of making a reservation, "Defendants forward information about the traveler to suppliers and request reservations, but the traveler does not yet have a particular room assignment or have actual access to any hotel room at the time of the reservation."  (*id.* at ¶ 33);

- Upon check-in, it is the hotels, not Defendants, that "assign[ ] and grant[ ] the traveler access to a specific room" (*id.* at ¶ 40);

- "Hotels in Rosemont maintain physical possession of their hotel rooms at all times" and "unless [Defendants] decide to pay the hotels for a room for their own use, Defendants do not have the right to themselves occupy a room in a hotel" (*id.* at ¶ 49);

- "Defendants do not have complete control over whether a room is available for booking at the time the traveler attempts to make a reservation," they have no "control over which specific room the hotel ultimately furnishes the traveler," and they do not control whether a room will ultimately be provided to a traveler if the hotel is overbooked (*id.* at ¶ 51);

- "Under the terms of their contracts with hotels, Defendants are not obligated to facilitate any minimum number of reservations and are not obligated to facilitate any reservations at all" (*id.* at ¶ 54); and

- Other than generally losing business volume, "Defendants suffer no penalty and have no financial risk if they fail to book reservations for a particular hotel" (*id.* at ¶ 55).

Given these key concessions, it is no surprise that Plaintiff's 30(b)(6) deponent admitted

that the Village did not know of any evidence suggesting that Defendants had an ownership

interest in or conducted the operation of any hotel or motel rooms within Rosemont.  (*Id.* at

---

(continued…)

*Phila. v. City of Phila. Tax Review Bd.*, No. 00764 (Pa. Ct. Common Pleas, 1st Dist. Jan. 14, 2011) (attached hereto as Ex. B) (finding that after considering Expedia's public filings and contracts, it was obvious that Expedia did not rent out, operate, own or have custody of hotel rooms).

¶ 19.)  Yet, when, in their Statement of Facts, Defendants listed as an undisputed fact that "Defendants do not have an ownership interest in or operate any hotel or motel rooms within Rosemont," Plaintiff attempted to back away from its 30(b)(6) deponent's admission.  (Resp. to Defs.' SOF at ¶ 19.)  In violation of Local Rule 56.1, which requires a "specific" reference to the record to deny any allegation, Plaintiff's response incorporates fully *eight pages* of Plaintiff's Response to Defendants' Statement of Facts.  (*Id.*)  Worse, no portion of the record discussed within those eight pages actually establishes that Defendants own or conduct the operation of any hotels in Rosemont.  (*Id.* at ¶¶ 12-19.)  Simply put, Plaintiff has failed to provide any evidence establishing that Defendants own or operate a hotel.

Nor does Plaintiff's position find any support in the law.  In a desperate attempt to manufacture support where none exists, Plaintiff cites portions of the *City of Fairview Heights* decision and implies that, after full review of the evidence, the court there "held" that Defendants are hotel owners or operators.  (Plf.'s Br. at 8.)  To the contrary, the *Fairview Heights* Court decided a *motion to dismiss* in the pre-*Twombly* era, and was required to accept all of plaintiff's bare allegations as true and determine if Plaintiff could possibly state a claim "under any set of facts that could be established consistent with the allegations." *Fairview Heights*, 2006 WL 6319817 at *3 (S.D. Ill. July 6, 2002).  While the court there denied Defendants' motion to dismiss Fairview Heights' ordinance claim, it did so under the now-outdated premise that a plaintiff "need not plead facts; they need not plead law; they plead claims for relief." *Id.* at *4. Thus, *Fairview Heights* does not assist Plaintiff in proving its factual allegations here.

Much more on point is the Pennsylvania state court's recent decision on a full administrative record, in which the court essentially overruled the arguments Plaintiff puts forth in support of its claim here that Defendants "have an ownership interest in" or "operate" hotels.

The court there affirmed the Tax Review Board's finding that Expedia was not a hotel "operator" as defined in the Philadelphia ordinance at issue. *City of Phila. v. City of Phila. Tax Review Bd.*, No. 00764, at *3 (Ct. of Comm. Pls. 1st Jud. Dist. of Pa. Jan. 14, 2011) (attached as Ex. B). Furthermore, the court expressly rejected the City of Philadelphia's argument that Expedia has the right to rent or lease hotel rooms, holding that it is always the hotel that "rents or leases the room" to customers and that the record "clearly establishes that the transaction with Expedia provides the traveler with only an expectation of a room upon payment to Expedia, and not a right to [a] room." *Id.* Similarly, the Circuit Court of Jefferson County, Alabama recently concluded, based on the same facts present here that Defendants do not rent hotel rooms to customers. *City of Birmingham, et al. v. Orbitz, Inc.*, CV 09-3607 JSV, Mar. 24, 2011 Order at 2 (Jefferson County Cir. Ct. 2011) (attached as Ex. C) (Defendants "are not engaged in the business of renting or furnishing any room or rooms in any hotel" and "provide a service to the public for which they are compensated by their customers").

Not only is Plaintiff's claim that Defendants "conduct the operation of" a hotel unsupported by facts in the record or applicable law, it is also fundamentally inconsistent with Plaintiff's prior interpretation and administration of its own licensing ordinance. It is unlawful to "engage in or operate" the business of renting hotel or motel rooms within the Village of Rosemont without first paying a $7.00 per room Business License Fee to the Village. (Defs' Stmnt. of Add'l Facts at ¶ 1.) Although hotels doing business within the Village apply for and receive Business Licenses from the Village, no Defendant has ever applied for a license, and the Village has never requested that any Defendant (or any other travel intermediary) do so before hotel rooms within Rosemont can be listed on that Defendant's web site—even during the course of this litigation. (*Id.* at ¶ 3.) Plaintiff fails to explain why Defendants do not "operate" hotel

rooms for purposes of the licensing ordinance, but do "conduct the operation of" hotels for purposes of the tax ordinance.

        **(b)**    **Defendants do not "receive the consideration for the rental of" hotel rooms.**

Finally, for the same reasons that Defendants' compensation is not part of the "room rental rate," Defendants do not "receive the consideration for the rental" of a hotel room. *See supra* Section I(A)(1). Hotels set the "net rate," and in exchange for that rate they allow a traveler to occupy a hotel room. (Resp. to Defs.' SOF at ¶ 32, 33, 40.) Defendants never possess a hotel room or deliver one to a customer. (*Id.* at ¶¶ 40, 49.) Defendants do not grant their customer a right of occupancy. (*Id.*) Defendants only provide a room reservation. (*Id.* at ¶ 33.) A right of occupancy can only be granted by the hotel at the time of check-in. *See Rockgate Mgmt. Co. v. CGH Ins., Inc.*, 88 P.3d 798, 805 (Kan. Ct. App. 2004) (rejecting argument that a hotel guest "came into the right of occupancy with [a] confirmed reservation" before check-in). The hotels are compensated for the room "rental," while Defendants are compensated for online travel services.

Plaintiff appears to argue that because Defendants' service fees are "incidental" to the "sale or provision of tangible property"—in this case, temporary use of a hotel room—those fees are taxable. (Plf.'s Br. at 10.) The cases that Plaintiff cites, however, simply explore the boundaries between sales and occupation taxes. That distinction has nothing to do with Defendants' argument that their service fees are not part of the consideration for room "rental." Try as it might, Plaintiff cannot show that Defendants are hotel "owners" with a duty to collect and remit the Hotel Tax.

    **B.**    **Plaintiff's Interpretation of the Ordinance Would Violate the Uniformity Clause of the Illinois Constitution.**

Defendants demonstrated in their opening brief that Plaintiff's interpretation of the Hotel

Tax would violate the Uniformity Clause of the Illinois Constitution. (Defs.' Mot. at 11-13.) That is because Plaintiff cannot, consistent with that clause, tax Defendants as hotel "owners" when they are in fact travel service providers. (*Id.*) Plaintiff implicitly concedes that, should the Court follow the Illinois Appellate Court's decision in *Northwestern Univ. v. City of Evanston*, 582 N.E.2d 1251 (Ill. App. Ct. 1991), it would be required to rule that Plaintiff's interpretation of the Hotel Tax violates the Uniformity Clause. Plaintiff also fails to cite a single case questioning the *Northwestern University* case in the twenty years since it was published. Instead, Plaintiff encourages the Court to simply disregard the case by speculating that the Illinois Supreme Court would decide the case differently.

While it seems quite inadvisable to disregard an Illinois Appellate Court's take on a matter of Illinois Constitutional Law (particularly one that has gone unchallenged for decades), the Court here need not speculate on whether the Illinois Supreme Court would adopt the appellate court's logic. It already has, in two cases cited in Defendants' opening brief. (Defs.' Mot. at 12.) Most notably, in *Central Television Servs., Inc. v. Isaacs*, 189 N.W.2d 333, 337 (Ill. 1963), the Illinois Supreme Court held that a sales tax aimed at goods sold incidentally to television repair services was constitutionally infirm. The statute, in a definition, specified that television repairmen "shall not be regarded as being engaged primarily in a service occupation in such [sales]transactions." *Id.* at 337. The Court took issue with this definition, concluding that it was "obviously a legislative effort to convert something into that which it is not." *Id.* The Court then stated unequivocally, that "[i]t is constitutionally impermissible to define terms in a legislative enactment contrary to their common meaning." *Id.* (internal quotation marks omitted). The Court held that where, as here, the statutory definition did not reflect the reality of the taxpayers' business, the tax violated the Uniformity Clause. *Id.* at 338.

- 10 -

Similarly, in *Ohio Oil Co. v. Wright*, the Illinois Supreme Court rejected the legislature's effort to define the term oil "producer" in a tax statute to include those who merely owned a royalty interest in oil-producing property. 53 N.E.2d 966 (Ill. 1944). The Court wrote: "It manifestly is not a fact that such royalty owners are in the business of producing oil any more than a stockholder by accepting the dividends from a corporation is in the corporate business, whether the dividends be cash or property in kind. The legislature does not have the power by legislation to declare that not to be a fact which everyone knows is a fact." *Id.* at 971-72. The Court found that the tax violated uniformity both because it excluded some actual "producers" and wrongfully included royalty earners. *Id.* at 974.

Plaintiff argues that these cases are of no moment because other Illinois Supreme Court cases use a different framework to analyze equal protection-like challenges based on the Uniformity Clause. (Plf's. Br. at 13.) However, none of the cases relied upon by Plaintiff indicates that it is acceptable to tax an entity by definition, and none expressly or even impliedly overrules *Ohio Oil* or *Central Television.* The Illinois Supreme Court has spoken on the analysis in the *Northwestern University* case and has consistently embraced that analysis. Defendants here are not hotel owners (*see supra* at Section I(A)(2)), and Plaintiff cannot change that reality through the Ordinance's definition.

Plaintiff's only other counter to Defendants' Uniformity Clause argument is an ill-considered claim that Defendants seek an "unreasonable exemption" from an Ordinance that does not include them in the first place. (Plf.'s Br. at 14.)[4] In support, Plaintiff cites language from the *Fairview Heights* decision suggesting that Defendants' interpretation of the Ordinance

---

[4] Plaintiff also argues that under *Stenberg v. Carhart*, 530 U.S. 914, 944 (2000), statutory definitions must always be enforced, even if they are contrary to the defined term's ordinary meaning. But, as evidenced in the Illinois Supreme Court case law cited above, the federal rule of statutory construction articulated in *Stenberg* is not applicable to Illinois tax statutes, which must meet the more stringent standards imposed by the Illinois Constitution's Uniformity Clause.

might create a loophole though which an entity could rent rooms though a sham corporation to avoid the tax. (*Id.*) However, Defendants are not hotels seeking to avoid paying taxes by setting up a sham entity to hide the rent actually received for the room. Defendants are businesses that have an arms-length contractual relationship with hotels and that provide a service for which they are compensated. This very "loophole" argument has been rejected by other courts. *See, e.g.*, *Expedia v. City of Anaheim*, Case No. JCCP 4472, slip op. at 25 (Cal. Sup. Ct. Feb. 1, 2010) (attached as Ex. D); *Pitt Cnty. v. Hotels.com, L.P,* 553 F.3d 308, 313-14 (4th Cir. 2009); *Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 388-89 (6th Cir. 2009). In any event, fixing a perceived "loophole" is the function of the legislature, not the courts. As the Fourth Circuit stated in rejecting the same argument, "it seems to us preferable to accept the statute as written, leaving to [the legislature] the function of closing loopholes (if they exist)[.]" *Pitt Cnty.*, 553 F.3d at 314; *Louisville/ Jefferson Cnty.*, 590 F.3d at 388-89 (same).

> ### C. Plaintiff's Construction of the Hotel Tax Would Result in Double Taxation.

Plaintiff's interpretation of the Hotel Tax must also be rejected because it would result in impermissible double taxation. (Defs.' Mot. at 13.) Plaintiff's 30(b)(6) witness admitted that Plaintiff's interpretation of the Ordinance could result in multiple hotel "owners" responsible to collect and remit the Hotel Tax for the same transaction. (Defs.' SOF ¶ 73.) Plaintiff's attorneys nevertheless argue that the Ordinance would never result in double taxation because "under the Ordinance, the tax is only collected once—'from the renter at the time [the owner] collects the rental payment[.]'" (Plf.'s Br. at 16.)

Even Plaintiff's 30(b)(6) witness recognized that under Plaintiff's theory, the Defendants "purchase" a hotel room and then "re-sell" it, thus creating two separate rental transactions. (Plf.'s Br. at 4; Resp. to Defs.' SOF at ¶ 73.) Thus, by logical extension, there would need to be two "rentors" and two "owners" that would "receive the consideration for" a customer's stay—

the Defendants (who receive the entire "retail rate") and the hotels (who receive the "net rate"). While Plaintiff implies that it would only be concerned with the first transaction, there is no such setoff language or limiting language in the Ordinance. Plaintiff cannot add phantom language to the Ordinance to better its litigation position.

Double taxation is forbidden absent plain and unmistakable legislative intent. *Bordon v. Nudelman*, 369 Ill. 214, 218 (1938) ("the legislative intent that there be double taxation is required to be plain and unmistakable"). The fact that the Plaintiff's interpretation would result in double taxation, and no intent to permit multiple taxation can be found in the Ordinance, compels the conclusion that Plaintiff's interpretation is unreasonable and should be rejected.

## II. AT BEST, PLAINTIFF CAN SHOW THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED ON THE GROUND THAT THE ORDINANCE IS AMBIGUOUS AND VAGUE

Plaintiff cannot, and therefore does not, dispute that under Illinois law, taxing ordinances are strictly construed against taxing authorities, and any ambiguity must be interpreted in favor of the taxpayer. *Van's Material Co.*, 131 Ill. 2d at 202. Instead, Plaintiff argues that "Defendants' liability under the plain language of the Ordinance is clear," and that therefore the rule of construction is inapplicable. (Plf.'s Br. at 8, n.11.) But even if the Court finds Plaintiff's interpretation reasonable (which it is not), the fact that Defendants have offered an alternative reasonable construction means that it should be construed against the tax authority and the taxpayer wins. *Paciga v. Prop. Tax Appeal Bd.*, 322 Ill. App. 3d 157, 161 (2d Dist. 2001) (tax statute was ambiguous because it was susceptible to two conflicting interpretations).

Perhaps the best evidence that Defendants' interpretation of the Ordinance is reasonable (and thus entitled to deference) is that numerous courts have ruled that Defendants are not liable to pay hotel taxes under similar ordinances. *See, e.g., Pitt County,* 553 F.3d 308 (affirming dismissal on the ground that Defendants are not "operators" of hotels); *Santa Monica v. Expedia,*

*Inc*., No. JCCP 4472 (Superior Court of Los Angeles County, California Mar. 16, 2011) (sustaining demurrer without leave to amend and finding the tax is on the amount received by the hotel and not the amount paid by the transient to the Defendant for occupancy of the room and other services) (attached as Ex. E); *Gallup v. Hotels.com, L.P*., No. 07-cv-00644 (D.N.M. Mar. 1, 2010) (denying City's motion for partial summary judgment; affirming that Defendants are not "vendors" – defined as the hotel operators who furnish lodging in the exercise of taxable service of lodging – as a matter of law) (attached as Ex. F); *Orange v. Hotels.com, L.P*., No. 06-cv-413, 2007 U.S. Dist. LEXIS 70482 (E.D. Tex. Sept. 21, 2007) (dismissing complaint and finding that ordinance only imposes tax on consideration actually paid to hotel); *Bowling Green v. Hotels.com*, No. 09-CL-00409 (Circuit Court, Warren County, Kentucky Apr. 8, 2010) (dismissing complaint and finding that the statutes "do not cover the [Defendants'] activities") (attached as Ex. G).

No court has ever reviewed an evidentiary record and concluded that Defendants are hotel "operators," or that Defendants "rent hotel rooms" to customers.  In fact, numerous courts have determined on the merits that Defendants are not hotel operators and do not rent hotel rooms.  *See, e.g., City of Phila.* at *3; *Pitt Cnty.*, 553 F.3d at 313; *Transient Occupancy Tax Cases*, Case No. JCCP 4472 (Cal. Super. Ct., County of Los Angeles Feb. 1, 2010); *City of Houston & Harris Cnty.-Houston Sports Auth. v. Hotels.com, L.P., et al.*, No. 2007-13227 (270th Dist. Ct., Harris County, Tex. Jan. 19, 2010) (attached as Ex. H); *Louisville/Jefferson Cnty. Metro Gov't*, 590 F.3d at 383.

The reasonableness of Defendants' interpretation of the Ordinance is also confirmed by the fact that for 30 years, Plaintiff has only collected or sought to collect the Hotel Tax from hotels themselves.  Indeed, the Village's Hotel Tax Return does not even have a space for

- 14 -

Defendants to identify themselves and itemize the amount of tax they would be paying—the form only has space for the "name of hotel," "address of hotel," and "operator" of the hotel. (*See* Stmnt. of Add'l Facts at ¶ 4.) Plaintiff's tax form serves as direct and compelling evidence of the fact that the Hotel Tax has historically been interpreted to apply only to hotels.

Plaintiff's motion establishes at best that there are two reasonable interpretations of the Ordinance. The Court's choice in that situation is clear: the statute must be interpreted against Plaintiff, and Defendants' motion for summary judgment should be granted.

## III. DEFENDANTS' AFFIRMATIVE DEFENSES REQUIRE THE ENTRY OF JUDGMENT IN THEIR FAVOR

Even if the Court were otherwise inclined to adopt Plaintiff's strained interpretation of the Ordinance (which it should not), Defendants would still be entitled to summary judgment because Plaintiff's interpretation of the Ordinance violates the Illinois Constitution, the Commerce Clause and Equal Protection Clause of the United States Constitution, and the Internet Tax Freedom Act ("ITFA"). (Defs.' Mot. at 14-25.) Nothing in Plaintiffs' Opposition demonstrates otherwise.

### A. The Ordinance, As Interpreted by the Village, Violates the Illinois Constitution.

In Illinois, a home rule municipality has no authority to tax transactions that take place outside its jurisdiction. *See City of Carbondale v. Van Natta*, 61 Ill. 2d 483, 485 (Ill. 1975) (explaining that the Illinois Constitution of 1970 did not confer extraterritorial governmental powers on home rule units); *Comm'l Nat'l Bank of Chi. v. City of Chicago*, 89 Ill. 2d 45, 78 (1982) ("Chicago's imposition of tax liability or tax collection duties upon nonresident purchasers and sellers of services performed outside the City is incompatible with the intent of the drafters of our constitution"). Plaintiff does not seriously dispute that Defendants' services are provided outside of Illinois. (*See* Resp. to Defs.' SOF at ¶¶ 76-80.)

Instead, Plaintiff claims that the tax is not extraterritorial because Defendants are selling "inventory" of hotel rooms in Rosemont. (Plf.'s Br. at 12.) As discussed extensively above, that allegation is simply not true. But even if it were, Plaintiff can neither tax a traveler nor require Defendants to collect tax when the sale occurs outside the Village. For example, in *Mr. B's, Inc. v. City of Chicago*, the undisputed fact that the ticket resellers sold tickets for Chicago events was insufficient to determine extraterritoriality; the case was remanded to determine the "material question" of where the ticket resellers each transacted their business. 302 Ill.App.3d 939.

Plaintiff wrongly argues that *Mulligan v. Dunne*, 61 Ill.2d 544 (1975), stands for the proposition that home rule authorities can require a non-resident party to collect a tax for an extraterritorial sale if the sale concerns property in the jurisdiction. *Mulligan* merely held that nonresident liquor wholesalers were required to collect tax if they ***actually made sales inside the County***. 61 Ill.2d at 558. *See also Seigles Inc. v. City of St. Charles*, 365 Ill.App.3d 431, 438 (2nd Dist. 2006) (noting that the ordinance in *Mulligan* "was limited to sales inside the boundaries of the taxing entity. . . ."). Because Plaintiff admits that Defendants' sales transactions do not occur within Rosemont (Resp. to Defs.' SOF at ¶¶ 76-77), *Mulligan* does not support Plaintiff, and the tax is unconstitutionally extraterritorial.

**B.      The Hotel Tax Violates the United States Constitution's Commerce Clause.**

Defendants have demonstrated that imposition of the Hotel Tax to their facilitation services would violate the dormant Commerce Clause of the U.S. Constitution. (Defs.' Mot. at 15-21.) Indeed, as discussed below, the Village's proposed interpretation of the Hotel Tax would render it unconstitutional under each prong of the *Complete Auto* test.

1.      **There Is Insufficient Nexus To Impose the Hotel Tax upon Defendants and Their Transactions.**

(a)      **Plaintiff Lacks Transactional Nexus.**

Plaintiff insists that Defendants' online transactions with travelers have sufficient nexus with the Village for no other reason than that they relate to Rosemont hotels. (Plf.'s Br. at 18.) That argument ignores the reality that ***every relevant aspect of the transactions*** themselves occurs outside Rosemont. By Plaintiff's own contention, the transactions are completed online when "Defendants charge hotel customers' credit cards" and "enter into contractual agreements with travelers," ***not*** when travelers check into hotels in Rosemont. (Plf.'s Br. at 6.) When a customer outside Rosemont books an online reservation through Defendants (all of whom communicate with customers from outside Rosemont), the transaction is completed ***outside*** Rosemont. Likewise, Plaintiff does not dispute that ***all*** of Defendants' services—which include maintaining computer servers and networks, compiling information, helping consumers research hotel options, and facilitating the booking of hotel reservations (but which ***do not*** include physically providing a hotel room)—are performed ***outside*** Rosemont. (Resp. to Defs.' SOF ¶¶ 76-79, 80, 82.) And indeed, the revenue at issue in this case -- the difference between the amount travelers pay Defendants and the amount remitted to hotels (and taxed) in Rosemont -- ***never enters Rosemont***. The transactions at issue, therefore, are between out-of-state companies and, most often, out-of-state travelers through an out-of-state server or call center, and, accordingly, are out-of-state transactions with no nexus to Rosemont. (*Id.* ¶¶ 77, 80.) The tangential relationship to the eventual provision of a hotel room does not enable the Village to reach far beyond its borders to tax a transaction that occurs outside Rosemont and thereby capture a share of revenue that would otherwise never enter Rosemont. *See United States v. Edmonson County,* No. 1:00-cv-155-R6, 2001 U.S. Dist. LEXIS 17660, at *29 (W.D. Ky. Oct. 1,

- 17 -

2001) (rejecting Kentucky county's efforts to "expand its taxing net well beyond its boundaries . . . [by] seek[ing] to tax sales or income generated from sales consummated in Maryland that involve consumers who live other counties in Kentucky, [and] other states[.]").

(b)    <strong>Plaintiff Lacks Substantial Nexus with Defendants.</strong>

Plaintiff also fails to demonstrate that it has a substantial nexus with Defendants.

First, the *Quill* physical presence requirement is not limited to taxes on mail order businesses, as Plaintiff contends.  (Plf.'s Br. at 18.)  Physical presence is required whenever a sales or use tax is imposed on a remote seller.  *See Irwin Indus. Tool Co. v. Illinois Dep't. of Revenue*, 238 Ill. 2d 332, 342 (2010) ("[T]o satisfy the substantial nexus requirement in the sales and use tax context, physical presence within the taxing state is necessary.").

Second, Plaintiff misapplies the nexus standard.  It is more substantial than the minimum contacts needed to satisfy due process.  (*Compare* Plf.'s Br. at 18 ("Defendants' **connection** to Rosemont is much stronger"), *with Quill Corp. v. North Dakota*, 504 U.S. 298, 313 (1992) ("[A] corporation may have the 'minimum contacts' with a taxing State as required by the Due Process Clause, and yet lack the 'substantial nexus' with that State as required by the Commerce Clause.").  Substantial nexus requires not merely a "connection," but an actual ***physical presence*** in the tax jurisdiction of sufficient ***quantity***—meaning more than a "slight" presence, *see Quill Corp.*, 504 U.S. at 315—and ***quality***—meaning that it must be an "exploitation of the consumer market."  *Miller Bros. Co. v. Maryland*, 347 U.S. 340, 347 (1954).  A physical presence that does not exploit the consumer market by actively soliciting sales is thus legally insufficient to establish nexus, even if that presence benefits the taxpayer in other ways.  *See St. Tammany Parish Tax Collector v. Barnesandnoble.com*, 481 F. Supp. 2d 575, 581 (E.D. La. 2007) (finding lack of nexus because the activities performed by a third-party on behalf of out-of-state company within tax jurisdiction "were insufficient to treat [third-party] as acting as a marketing

presence"). And nexus cannot be attributed to a taxpayer from a third-party unless the third party actually **markets** the taxpayer's goods or services on its behalf. *Id.*[5]

Defendants have no physical presence in Rosemont. (Defs.' Mot. at 18.) Defendants are headquartered outside Illinois and have no employees, offices, computer servers or call centers in the Village. (Defs.' SOF ¶¶ 76-82.) And none of Defendants' supposed "connections" to Rosemont—which the Village identifies indirectly through citation to selectively culled and wrongly decided cases—constitute physical presence.

Furthermore, hotel stays by Defendants' customers to Rosemont hotels do not establish physical presence, (Plf.'s Br. at 19 (Defendants "have the presence of bringing individuals into Chicago for commercial profit.")), because customers do not act on behalf of Defendants, do not solicit business on behalf of Defendants and certainly cannot be deemed "property" of Defendants. Accordingly, their physical presence in Rosemont cannot be imputed to Defendants.

Nor do Defendants' contractual relationships with hotels in Rosemont establish the requisite physical presence. (Plf.'s Br. at 20.) Quill had myriad contracts and relationships within the taxing jurisdiction—it was "the sixth largest vendor of office supplies" in North Dakota, and had "about 3,000 customers" in the State—but those relationships were not relevant to whether Quill itself had a "physical presence" in the jurisdiction. *See Quill Corp.*, 504 U.S. at 302. Because the hotels do not act on behalf of Defendants to market Defendants' services, the hotels' physical presence in Rosemont simply cannot be imputed to Defendants.

---

[5] *See also Tyler Pipe Indus., Inc. v. Wash. State Dep't of Revenue*, 483 U.S. 232, 250 (1987) (finding the "crucial" factor of local market exploitation existed where nonresident manufacturer used resident sales representatives to call on customers, solicit and secure a large volume of sales); *Scripto, Inc. v. Carson*, 362 U.S. 207, 209 (1960) (finding nexus where nonresident company hired in-state sales representatives "for the purpose of attracting, soliciting and obtaining [in-state] customers").

Finally, advertising and marketing -- whether by mail, television, radio, or online -- does not establish physical presence. (Plf.'s Br. at 18, 20 (alleging that Defendants "market" rooms).) Quill "solicit[ed] business through catalogs and flyers, advertisements in national periodicals, and telephone calls," and mailed "24 tons of catalogs and flyers . . . into the State every year," yet the Supreme Court concluded physical presence was lacking. *Quill Corp.*, 504 U.S. at 302, 304.

### 2. Under Plaintiff's Interpretation, the Hotel Tax Is Not Fairly Apportioned.

Plaintiff admits that "the fundamental economic activity" subject to the Hotel Tax is the "rental of the hotel room within the Village" (Plf.'s Br. at 22), but that is *not* the economic activity that it seeks to tax here. Plaintiff *already* obtains tax revenue from the rental of the hotel room when Defendants remit travelers' payment to hotels which, in turn, pay Hotel Tax. (Resp. to Defs.' SOF at ¶ 43.) Instead, in this case, Plaintiff seeks to tax a totally *different economic activity*—Defendants' travel facilitation services—that unquestionably occurs *outside* its borders. That value is not "fairly attributable" to activity in Rosemont, and could be taxed by a different jurisdiction. *See Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 184-85 (1995) (The purpose of the apportionment prong is to prevent multiple taxation—"whenever one State's act of overreaching combines with the possibility that another State will claim its fair share of the value taxed").

Here, Plaintiff unquestionably seeks to tax economic activity that occurs outside its borders. The Supreme Court articulated the relevant test for the attribution of economic value in *Jefferson Lines* when it held that Oklahoma could tax the price of an entire bus trip that started in Oklahoma but traveled through other states, because a service transaction can be boiled down to a single "taxable event" that occurs in one state which allows *that* state to tax the entire

transaction. *Id.* at 190. The Court further held that "[t]he taxable event comprises *agreement, payment, and delivery of some of the services in the taxing State*; no other State can claim to be the site of the same combination." *Id.* Applying that test here, the "taxable event" does not occur in Rosemont. Plaintiff concedes that "agreement" and "payment" occur outside Rosemont when "Defendants charge hotel customers' credit cards" and "enter into contractual agreements with travelers" online. (Plf.'s Br. at 6.) Likewise, Plaintiff cannot dispute that "some services"—namely, Defendants' services in helping travelers locate and reserve hotel rooms— occur outside Rosemont. (Resp. to Defts.' SOF at ¶¶ 76-77, 80.) Thus, under the Supreme Court's test, that value is attributable to activity elsewhere, *not* Rosemont. Accordingly, the jurisdiction where the "taxable event" occurs—again *not* Rosemont—has proper claim to tax that corresponding value. This means that, as applied by Plaintiff, the Hotel Tax is *not* externally consistent. And, significantly, Plaintiff provided no offsetting credit to cure the problem created by its overreaching. *See Jefferson Lines*, 514 U.S. at 194-95.

Were this Court to uphold the Plaintiff's attempt to impose the Hotel Room Tax on Defendants, a significant threat of real multiple taxation would exist. Defendants could be taxed on their facilitation services in a number of jurisdictions, including the state or locality where each Defendant is physically located, the state or locality in which the customers is located, and the state or locality where the hotel is located.[6] This is exactly the type of interstate burden the Commerce Clause is meant to prevent.

### 3. Under Plaintiff's Interpretation, the Hotel Tax Discriminates Against Interstate Commerce.

Plaintiff insists that the Hotel Tax does not discriminate against interstate commerce

---

[6] For instance, a bill recently was proposed in Illinois that would have taxed the provision of "travel reservation arrangement services." H.B. 1665, Floor Amend. no. 1, § 15, 96th Ill. Gen. Assem. (Jan. 6, 2011). This bill would have taxed Orbitz, headquartered and operated in Illinois, on its reservations services regardless of where the associated hotel was located.

CHI-1799027v4

because it makes no facial distinction in applying to "all who rent hotel rooms." (Plf.'s Br. at 22.) But selective enforcement of an otherwise neutral tax clearly constitutes discrimination. *See CSX Transp., Inc. v. Alabama Dept. of Rev.,* 131 S.Ct. 1101, 1109 (2011). And indeed, Plaintiff's assertion that it has separately sought to tax an Illinois corporation that is not party to this suit cannot overcome an otherwise established pattern of non-enforcement against local businesses. (Plf.'s Br. at 23.) The undisputed fact remains that Plaintiff has not sought to impose and recover the Hotel Tax from travel intermediaries using the same business model within Illinois. (Resp. to Defs.' SOF at ¶¶ 65-67.)

**4.    Under Plaintiff's Interpretation, the Hotel Tax Is Not Fairly Related to Services Provided by Rosemont.**

Plaintiff contends that the Hotel Tax is fairly related to the services provided by Rosemont because "persons who rent real property within the Village" rely on City services, including police and fire protection and mass transit. (Plf.'s Br. at 23.) But that is not the test. The Illinois Appellate Court has squarely held that *Complete Auto's* fairly related prong prohibits tax on an activity unless the ***activity itself*** benefits from the services. *See Am. River Transp. Co. v. Bower*, 351 Ill. App. 3d 208, 212 (Ill. App. Ct. 2d Dist. 2004). Here, it is plain that the Plaintiff's services do not benefit Defendants' out-of-state travel reservation activities.

For example, in *American River Transportation*, the taxpayer operated a number of large tugboats on the Illinois River. *Id.* Although the boats spent more than 50% of their time in Illinois, they never docked here in Illinois. *Id.* The question was whether Illinois could impose its Use Tax on the amount of the fuel consumed while the tugboats were in Illinois. *Id.* The court held that *Complete Auto's* fairly related prong prevented Illinois from taxing the fuel used on the Illinois River. *Id.* Although the state provided police, fire and other services that benefited the taxpayer, it did not provide services that benefited the tugboats themselves.

Defendants process all online reservation requests, regardless of the guest's home location or travel destination, from facilities outside Illinois. (Resp. to Defts.' SOF at ¶ 80.) Plaintiff does nothing to help maintain the technology and the employees Defendants use in other states to facilitate reservations. The services Rosemont provides do not benefit these out-of-state operations. It has not supplied police and fire protection for the out-of-state buildings that house Defendants' employees and equipment, nor has it provided the communications and highway infrastructure used by Defendants' businesses. All of Defendants' reservation activity related to the transactions occurs *outside of Rosemont*. Plaintiff's attempt to impose tax on the facilitation fee received by the out-of-state Defendants from consumers thus violates the "fairly related" requirement.

### C.    Plaintiff's Application of the Hotel Tax Violates ITFA.

Defendants previously showed that Plaintiff's interpretation of the Hotel Tax violates ITFA, because it would tax travel facilitation services when provided by Defendants online, but not when provided by travel agents through traditional means. (Def. Mot. at 22-23.) In response, Plaintiff does not dispute that the services rendered by travel agents and Defendants are similar, but claims that the Hotel Tax is not discriminatory under ITFA because it is imposed on all *transactions* that are similar to Defendants' internet *transactions*. (Plf.'s Br. at 23.) But that is not the relevant standard.[7] Instead, a tax is discriminatory under ITFA if it taxes transactions performed online, but does not "generally" tax transactions "involving similar . . . services, or information accomplished through other means." § 1105(2)(A)(i).[8] Thus, whether a

---

[7] Indeed, one of the defining characteristic of Defendants' internet transactions is that they occur on the internet. The claim that a tax applies to other internet transactions does not satisfy ITFA, but merely shows that it discriminates against all internet commerce equally.

[8] Defendants contend that the Village's application of the Hotel Tax to their services violates §§ 1105(2)(A)(i), (ii), and (iii). Accordingly, the Seventh Circuit's recent decision on § 1105(B)(ii) is inapposite. *City of Chicago v. StubHub!, Inc.*, 624 F.3d 363, 364-65 (7th Cir. 2010). In that case, the

- 23 -

tax is discriminatory under ITFA turns not on the similarity of the transactions themselves, but rather on ***the similarity of the services being sold***. Under Plaintiff's' interpretation, if a traveler pays a travel agent to help locate and book a hotel reservation ***offline***, she does not pay tax on that service, but if the same traveler pays Defendants for the exact same service ***online***, she does pay tax on that service. That is clear discrimination under ITFA. *See* § 1105(2)(A)(i); *see also* § 1105(2)(A)(ii) (tax is discriminatory if it "imposes an obligation to collect or pay the tax on a different person or entity than in the case of transactions involving similar property, goods, services, or information accomplished through other means").

Plaintiff further claims its Hotel Tax is not discriminatory because the Village also seeks to collect tax for Defendants' "telephonic transactions." (Plf.'s Br. at 23.) But a few isolated exceptions do not excuse what is otherwise manifest discrimination. Under ITFA, a tax is discriminatory if it applies to online sales, but "is not ***generally*** imposed and legally collectible" to the same sales offline. § 1105(2)(A)(i). ITFA is concerned with the ***general*** application of a tax and an otherwise discriminatory tax is not exonerated because Plaintiff inadvertently taxes some off-line transactions as well. The application of the Hotel Tax to Defendants' phone transactions is merely incidental to Plaintiff's efforts to aim its tax at online transactions. It has unequivocally applied the Hotel Tax to online business, and has ***generally*** not applied the Hotel Tax to offline businesses. (Resp. to Defs.' SOF at ¶ 67.)

> **D.**     **Plaintiff's Application of the Hotel Tax Violates Due Process And Equal Protection.**

---

(continued…)

Seventh Circuit found § 1105(20)(B)(ii) of the ITFA to be inapplicable where StubHub! was not subject to the amusement tax "solely" because it was online. *Id*. at 366-67. ("Because the ordinance applies ***equally*** to ticket resales at physical auction houses, the Chicago Board of Trade, and venues such as StubHub!, the tax is not 'discriminatory' under § 1104(2)(B)(ii) [of ITFA].") The Seventh Circuit did *not*, however, make any determination with respect to the provisions at issue in this case.

Plaintiff contends that no equal protection violation occurs because the Hotel Tax "makes all those 'who receiv[e] the consideration' for the rental liable." (Plf.'s Br. at 25.) But that is not how the Village has enforced the tax. *See Brown's Furniture, Inc. v. Wagner*, 665 N.E.2d 795 (Ill. 1996) ("The guarantee of equal protection applies not only to facial legislative classifications, but also to the administration of laws as well."); *Ciechon v. City of Chicago*, 686 F. 2d 511, 522 (7th Cir. 1982) ("Equal protection demands at a minimum that . . . [government] must apply its laws in a rational and nonarbitrary way."). Since Plaintiff has sought to enforce the tax against Defendants, but not against travel intermediaries, it now has the burden to show that substantial differences exist between Defendants and those other companies, and that its enforcement against Defendants on the basis of those differences bears a reasonable relationship to the object of the legislation. *See Communications & Cable of Chicago, Inc. v. City of Chicago*, 668 N.E. 2d 1032, 1049 (Ill. App. 3d 1996). Plaintiff has failed to satisfy its burden.

Plaintiff also contends that the key terms of the Ordinance are not unconstitutionally vague because there can be "no doubt of their meaning." (Plf.'s Br. at 24.) But as Defendants demonstrated in their opening brief and in Section II *infra*, the Ordinance, and particularly the expansive definition of "owner" is vague under Plaintiff's interpretation. Given the uncertainty of the Ordinance's meaning according to Plaintiff, Defendants had no fair warning of any tax liability. Vague laws are contrary to due process rights because they "may trap the innocent by not providing fair warning" and "risk arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972).

## CONCLUSION

For all the reasons set forth above, Defendants request that the Court GRANT their motion for summary judgment and DENY Plaintiff's Cross Motion for Summary Judgment.

CHI-1799027v4

Dated: April 26, 2011

Respectfully submitted,

/s/ Mark P. Rotatori

Mark P. Rotatori (06225962)
  Email: mprotatori@jonesday.com
Nicole Massey (6286386)
  Email: nmassey@jonesday.com
JONES DAY
77 West Wacker
Chicago, IL 60601-1692
Telephone:     (312) 782-3939
Facsimile:     (312) 782-8585

*Attorneys for Defendants Expedia, Inc.,
Hotels.com, L.P., and Hotwire, Inc.*

/s/ Justin L. Heather

Randolph K. Herndon (admitted *pro hac vice*)
Justin L. Heather
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
155 North Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone:     (312) 407-0700
Facsimile:     (312) 407-0411

*Attorneys for Defendants priceline.com
Incorporated and Travelweb LLC*

   /s/ Brian Stagner

Brian S. Stagner (admitted *pro hac vice*)
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102

Luke DeGrand
Teresa Frisbie
Tracey L. Wolfe
DEGRAND & WOLFE, P.C.
20 S. Clark St., Suite 2620
Chicago, IL 60603

*Attorneys for Defendants Site59.com, LLC
and Travelocity.com L.P.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on April 26, 2011, a copy of the foregoing

was served using the Court's CM/ECF system, which will send electronic notification to the

following attorneys of record at the e-mail addresses on file with the Court:

Paul M. Weiss
Jeffrey A. Leon
George Lang
Richard J. Burke
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602

Steve W. Berman
Karl Barth
Andrew Volk
Christopher A. O'Hara
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101

Elizabeth A. Fegan
Daniel J. Kurowski
HAGENS BERMAN SOBOL SHAPIRO LLP
1144 West Lake Street, Suite 400
Oak Park, IL 60301-1043
**Attorneys for Plaintiff**

Albert L. Hogan III
Justin Heather
SKADDEN ARPS SLATE MEAGHER & FLOM, LLP
155 N. Wacker Dr.
Chicago, IL 60606

Randolph Herndon
Karen Valihura
SKADDEN ARPS SLATE MEAGHER & FLOM, LLP
One Rodney Square
P.O. Box 636
Wilmington, DE 19899

CHI-1799027v4

Darrel J. Hieber
SKADDEN ARPS SLATE MEAGHER & FLOM, LLP
300 S. Grand Avenue, Suite 3400
Los Angeles, CA 90071
**Attorneys for priceline.com, Incorporated, Travelweb, LLC**

Luke DeGrand
Teresa Frisbie
Tracey L. Wolfe
DEGRAND & WOLFE, P.C.
20  S. Clark St., Suite 2620
Chicago, IL 60603

Brian S. Stagner
Stacy Russell
Scott R. Wiehle
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
**Attorneys for Site59.com, LLC and Travelocity.com, L.P.**

　　　　　　　　　　　　　　　s/ Nicole Massey
　　　　　　　　　　　　　　Nicole Massey