IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE VILLAGE OF ROSEMONT, ILLINOIS, | ) ) ) | |
| Plaintiff, | ) ) | 09 C 4438 |
| v. | ) ) | Judge Ronald A. Guzmán |
| PRICELINE.COM INC; TRAVELWEB LLC; TRAVELOCITY.COM LP; SITE59.COM LLC; EXPEDIA, INC.; HOTELS.COM, LP; and HOTWIRE, INC., | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The Village of Rosemont filed this action against defendants Priceline.Com Inc., Travelweb, LLC, Travelocity.com LP, Site59.com LLC, Expedia, Inc., Hotels.com, LP and Hotwire, Inc. alleging that they failed to pay the full amount of hotel tax due to the Village of Rosemont. Before the Court are plaintiff and defendants' cross-motions for summary judgment. For the reasons provided in this Memorandum Opinion and Order, the Court grants plaintiff's motion for summary judgment and denies defendants' motion for summary judgment.

## Facts

The Village of Rosemont imposes a tax upon the "privilege of renting a hotel or motel room within the Village of Rosemont" at a rate of "7% of the room rental rate," but not on "taxes or other non-room rental charges added to the hotel bill" ("Hotel Tax"). Rosemont Ordinance ("Ordinance") § 10-23(a). Although the tax is paid for by the "rentor," defined as the customer

who "seeks the privilege of occupying the hotel or motel room," it is the duty of "the owner of every hotel or motel to secure the tax from the rentor . . . and to pay over to the Village Collector the tax." §§ 10-23(b)-(c). "Owner" is defined under the Ordinance as any person (a) having "an ownership interest in [a hotel]," (b) "conducting the operation of a hotel" or (c) "receiving the consideration for the rental of such hotel or motel room." § 10-22.

Defendants are online travel companies ("OTCs") that book hotel rooms and make other travel arrangements for customers over the internet. (Defs.' LR 56.1 Stmt. ¶ 18.) Under the business model at issue here, called "the merchant model," OTCs enter into contracts with individual hotels wherein the parties agree on a wholesale price ("Net Rate") for the hotel rooms and the OTCs acquire the right to display, offer and facilitate reservations of the rooms to the public at a higher retail price ("Room Rental Rate"). (*Id.* ¶¶ 28-29.) While the Net Rate is negotiated between the hotels and the OTCs, the OTCs generally have broad discretion in establishing and changing the Room Rental Rate they charge to customers. (Pl.'s LR 56.1 Stmt. ¶¶ 5, 19, 23, 40, 59, 64-65, 73, 81, 87, 96.)

When a customer purchases a hotel reservation through an OTC, he is charged a single amount comprised of: (1) the "Room Rental Rate," which includes (a) the Net Rate and (b) an amount "retained by [the OTC] for travel-related services it provided to the traveler (sometimes referred to as the 'facilitation fee');" and (2) "Taxes & Services," which consists of (a) an estimated amount to cover the state and local occupancy taxes on the Net Rate and (b) additional amounts retained by the OTC as compensation for its travel services. (Defs.' LR 56.1 Stmt. ¶ 35.) Although the OTCs state on their websites that the Room Rental Rate is a combination of the Net Rate and their facilitation fee, they do not disclose the dollar amount of either. (Defs.' Resp. Pl.'s

LR 56.1 Stmt. ¶ 14.) Therefore, at the end of the OTC transaction, the customer sees only three line items: "Room Rental Rate," "Taxes & Services" and "Total." (Defs.' LR 56.1 Stmt. ¶ 36.)

When a customer reserves a room with an OTC, the OTC verifies with the hotel that the room is available, charges the customer's credit card and issues a room confirmation to the customer. (*Id.* ¶¶ 32, 34, 42.) Thus, the customer does not pay the hotel for the room or taxes, but only for incidentals and other non-room related services he purchases at the hotel. (*Id.*) After the customer has completed his stay, the hotel sends an invoice to the OTC for the Net Rate and the Hotel Tax based on the Net Rate. (*Id.* ¶ 29.) Upon receipt, the OTC pays this amount to the hotel, and the hotel remits the taxes to Rosemont. (*Id.*) No tax is paid on the difference between the amount charged to the customer and the Net Rate. (*Id.*) The OTC retains whatever it has collected over the amount remitted to the hotel. (*Id*. ¶ 35.)

## Discussion

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the movant meets this burden, the non-movant cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). In considering the motion, the court must view all evidence in the light most favorable to the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The main issues in this case are whether defendants are "owners" and their services are part of the "room rental rate," as those terms are used in the Ordinance. The Court will address each of these issues in turn, and then discuss defendants' affirmative defenses.

**I.      "Owner" as Defined Under the Ordinance**

Plaintiff argues that defendants fall within the definition of "owner" set forth in the Ordinance. An "owner" is any person (a) "having an ownership interest in [a hotel]," (b) "conducting the operation of a hotel" or (c) "receiving the consideration for the rental of such hotel or motel room." § 10-22. There is no dispute that defendants do not have an ownership interest in or conduct the operations of the hotels with which they do business. (Defs.' LR 56.1 Stmt. ¶¶ 22-32, 40, 47-49, 51.) The question is whether they receive "consideration for the rental[s]."

Defendants say they do not because consideration is synonymous with Net Rate, *i.e.*, the amount defendants pay to the hotel, not the total amount defendants charge the customer. (Defs.' Mot. Summ. J. at 11.) Plaintiff disagrees, arguing that consideration is what a customer must pay to obtain access to a room, which is the entire amount defendants charge. (Pl.'s Mot. Summ. J. at 8.) The Court, thus, must determine what the legislature intended "consideration" to mean.

The best indication of legislative intent is the plain and ordinary meaning of the language used. *Supreme Laundry Serv., LLC v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 747 (7th Cir. 2008) (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1215 (Ill. 1992)); *see People v. Fort*, 869 N.E.2d 950, 953 (Ill. App. Ct. 2007) (stating that a court may refer to dictionaries to determine the plain and ordinary meaning of words). Consideration is defined as "something (such as an act, a forbearance, or a return promise) bargained for and received by a

4

promisor from a promisee." Black's Law Dictionary (9th ed. 2009); *see also* Miriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/consideration (defining "consideration" as "an act or forbearance or the promise thereof done or given by one party in return for the act or promise of another") (last visited Aug. 18, 2011).

The bargain struck here is the payment of money for access to a hotel room, which occurs between defendants and the customers. When a customer books a reservation, defendants charge his credit card for the room rental rate, which include fees for their services. (Defs.' LR 56.1 Stmt. ¶¶ 32, 34, 42.) The customer does not pay the hotel anything to get the key to an OTC-booked room. (*Id.* ¶¶ 34, 42.) In fact, no money changes hands between an OTC customer and the hotel unless the customer incurs charges for incidental services like parking, laundry or food. (*Id.*) Because the customer cannot access his hotel room unless and until he pays the OTC's entire charge, the OTCs are owners who receive "consideration for . . . rental[s]," within the meaning of the Ordinance.

This interpretation is consistent with the collection provision of the Ordinance, which states: "Every [owner] . . . shall secure the tax from the rentor at the time he collects the rental payment for the hotel or motel room." § 10-23(d); *see Bonaguro v. Cnty. Officers Electoral Bd.*, 634 N.E.2d 712, 714 (Ill. 1994) ("[T]he statute should be evaluated as a whole; each provision should be construed in connection with every other section."). This provision suggests that anyone who collects the rental payment for a hotel room is an "owner" for purposes of the Ordinance.

Defendants argue that this interpretation is too broad and conflicts with the common meaning of the word "owner," in violation of the Uniformity Clause of the Illinois Constitution. The Uniformity Clause, however, states that "classifications of *taxpayers* must be reasonable." Ill.

5

Const. art IX, § 2 (emphasis added); *see Searle Pharm., Inc. v. Dep't of Revenue*, 512 N.E.2d 1240, 1245 (Ill. 1987) (explaining that the Illinois Constitution protects taxpayers from unreasonable tax schemes); *Cent. Television Serv., Inc. v. Isaacs*, 189 N.E.2d 333, 337 (Ill. 1963) (explaining that "reasonable" tax classifications (*i.e.*, defining those subject to the tax) cannot be over- or under-inclusive); *Nw. Univ. v. City of Evanston*, 582 N.E.2d 1251, 1254 (Ill. App. Ct. 1991) (holding that the City of Evanston could not expand its definition of "hotel" under its hotel tax ordinance to tax those who do not fall within the common meaning of the term). In this case, the taxpayers are the room rentors, not the owners, regardless of how the term owner is defined. Because the definition of owner does not affect, influence or change the tax base of the Ordinance, defendants' Uniformity Clause argument fails.

Defendants also argue that the Court's interpretation will result in double taxation because both the OTCs and the hotels are owners under the Ordinance. There is no evidence, however, that plaintiff has collected, or intends to collect, the tax from more than one owner.[1] Absent such evidence, the double taxation argument is not ripe for decision. *Cable TV Fund 14-A, Ltd. v. City of Naperville*, No. 96 C 5962, 1997 WL 280692, at *3 (N.D. Ill. May 21, 1997) ("The ripeness doctrine is a means of determining whether a dispute has progressed to a point that warrants judicial intervention.").

Last, defendants argue that plaintiff's interpretation of the Ordinance is inconsistent with the enforcement history of the Hotel Tax in Rosemont, which, defendants argue, is the best evidence of the Ordinance's meaning. Courts use enforcement history, however, "to reduce [the] uncertainty" that arises from "doubtful" or "obscure" statutory language. *See Antrim v. Guyer &*

---

[1] The fact that plaintiff has not, in the midst of this litigation, affirmatively relieved the hotels of their statutory obligations in transactions involving OTCs does not suggest otherwise.

*Calkins Co.*, 59 N.E.2d 316, 319 (Ill. App. Ct. 1945). In this case, the legislature's intent is clear from the plain language of the Ordinance. Thus, there is no need to consider its enforcement history.

In sum, the record establishes that defendants are owners as defined by the Ordinance.

**II.      The Amount Subject to Hotel Tax**

The next issue is whether the fees and mark-ups defendants include in the room rental charge, *i.e.*, the difference between the Net Rate they pay to the hotel and the amount they charge the customer, is part of the "the room rental rate" subject to the Tax. Defendants say it is not because such charges are for services, not the use of property. (Defs.' Mot. Summ. J. at 9.) Plaintiff argues that it is because the customer cannot occupy the hotel room unless he pays the additional charges. (Pl.'s Mot. Summ. J. at 10.) The Court agrees with plaintiff.

When a statute is clear and unambiguous, "a court must construe [it] as enacted without adding exceptions, conditions, or limitations" and giving each word or phrase reasonable meaning. *Opyt's Amoco, Inc. v. Vill. of S. Holland*, 595 N.E.2d 1060, 1066 (Ill. 1992); *Bethania Ass'n v. Jackson*, 635 N.E.2d 671, 674 (Ill. App. Ct. 1994).

The Ordinance states that a tax is levied on the "room rental rate," and is to be paid by the "rentor"- "the person seeking privilege of occupying the hotel room." § 10-23(b). Given this language, the Court finds that the legislature intended to tax the amount customers pay to occupy a hotel room in Rosemont. Defendants argue that this amount is the Net Rate they pay to the hotels, not the money they keep from each transaction, which they say is for services unrelated to room occupancy. There is no dispute, however, that defendants themselves do not obtain the right to occupy any room at any time during a transaction and their customers do so only after paying

7

defendants. (Defs.' LR 56.1 Stmt. ¶¶ 29, 49.) Because the record establishes that defendants' customers cannot occupy hotel rooms in Rosemont unless they pay the full amount defendants charge, defendants' fees and markups are part of the rental rate subject to the Tax. *See Expedia, Inc. v. City of Columbus*, 681 S.E.2d 122, 128 (Ga. 2009) (explaining that Expedia and other OTCs are travel intermediaries, not room occupants, and finding that the full price Expedia charges its customers, not the amount it pays hotels, is subject to a similar hotel tax); *see also Louisville/Jefferson Cnty. Metro Gov't v. Hotels.Com, LP*, 590 F.3d 381, 389 (6th Cir. 2009) (agreeing with the *Expedia* court's reasoning but coming to a different result based on an issue not raised in this case).

Defendants also argue that the Hotel Tax is a sales tax and thus, cannot be levied on defendants' services.[2] *Commercial Nat'l Bank of Chi. v. City of Chi.*, 432 N.E.2d 227, 235 (Ill. 1982) (stating that services must be taxed by an occupation tax); *see Springfield Hotel-Motel Ass'n v. City of Springfield*, 457 N.E.2d 1017, 1020-21 (Ill. App. Ct. 1983) (stating that sales or use taxes apply only to the sale or use of tangible property). To determine the kind of tax applicable to a particular transaction, the Court examines the "totality of the transaction," not the labels the parties give to it. *Mr. B's, Inc. v. City of Chi.*, 706 N.E.2d 1001, 1005 (Ill. App. Ct.

---

[2] Defendants argue that plaintiff "conclusively admitted" this point by failing to respond timely to defendants' second requests for admission. (Defs.' Resp. Pl.'s' Mot. Summ. J. 3 n.2); *see* Fed R. Civ. P. 36(a) (stating that a matter is deemed admitted if the party to whom the request is directed does not respond within thirty days without court intervention). Plaintiff admits that it responded two weeks late but requests that the Court treat the late filing as a motion to withdraw its default admissions. The Court has discretion to do so, if it would promote the presentation of the merits of the action and would not prejudice the requesting party. Fed. R. Civ. P. 36(b); *see Chisholm v. Cancer Treatment Ctrs. of Am.*, No. 01 C 0947, 2002 WL 31085090, at *2 (N.D. Ill. Sept. 18, 2002) (treating late response as an untimely motion to withdraw default admissions). Prejudice, in this context, is the requesting party's detrimental reliance on the admissions, not simply the fact that it will have "to argue the merits of the case." *Paymaster Corp. v. Cal. Checkwriter Co.*, No. 95 C 3646, 1996 WL 543322, at *2 (N.D. Ill. Sept. 23, 1996). Though defendants argue that the response came too late for them to conduct follow-up discovery, the record shows that it was filed a month before the discovery cutoff. Though the Court does not condone plaintiff's conduct with respect to its response, the lack of prejudice to defendants makes strict enforcement of Rule 36(a) inappropriate in this case. In any event, even if the Court were to admit plaintiff's responses, it would not change the outcome of this case.

1998). When the substance of a transaction is the sale or use of property and the service provided is merely incidental to it, the entire transaction is subject to a sales or use tax. *Id.* Conversely, if the substance of a transaction is provision of services and the use or sale of property is incidental to it, then the entire transaction is subject to an occupation tax. *Id.*

Illinois courts have held that an ordinance imposing a tax on the privilege of renting and using a hotel room is a use (or privilege) tax, not an occupation tax. *Marcus Corp v. Vill. of S. Holland*, 458 N.E.2d 112, 114-15 (Ill. App. Ct. 1983) (holding that the Village's hotel tax was a privilege tax and the fact that "the hotel and motel operators are required to collect and remit the tax to the municipality does not convert it into an occupation tax"); *Springfield Hotel-Motel Ass'n*, 457 N.E.2d at 1021-22 (holding that a tax on the use and privilege of renting a hotel room is a tax upon the use of tangible personal property and therefore not an occupation tax). Here, defendants' facilitation of travel-related services, *i.e.*, providing room rates for multiple hotels on their websites, confirming with the hotel that there is an available room, etc., are incidental to the predominant purpose of the online transaction – the rental of a hotel room. *Springfield Hotel-Motel Ass'n* , 457 N.E.2d at 1021-22 ("In the case of the rental of a hotel or motel room, it is our opinion that any service, *e.g.*, maid service, television, telephone, *et al.*, is only incidental to the use of the tangible property, *i.e.*, the structure and the appointments and accouterments in the room"); *see Katz v. City of Chi.*, 532 N.E.2d 322, 324 (Ill. App. Ct. 1988) (holding that a tax applied to a coin-operated laundry facility was a use tax not an occupation tax because the transaction, though it encompassed some services, was primarily for the leasing of washing machines). Because the transactions in this case are for the use of tangible personal property, not services, the Hotel Tax is a valid use tax, not an impermissible occupation tax.

9

**III.     Affirmative Defenses**

  **A.     Dormant Commerce Clause**

Defendants argue that the Ordinance violates the Commerce Clause of the U.S. Constitution because it fails to satisfy the four-part test announced in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 (1977). The Court disagrees. The Commerce Clause delegates to Congress the power to regulate commerce among the states. U.S. Const. art I, § 8. This "affirmative grant of authority to Congress also encompasses an implicit or 'dormant' limitation on the authority of the states to enact legislation affecting interstate commerce." *Healy v. Beer Inst.*, 491 U.S. 324, 326 n.1 (1989) (internal quotation omitted). The so-called "dormant Commerce Clause" prohibits certain state action that interferes with interstate commerce. *See Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997). A state tax withstands a dormant Commerce Clause challenge so long as the tax: "[1] is applied to an activity with a substantial nexus with the taxing State, [2] is fairly apportioned, [3] does not discriminate against interstate commerce, and [4] is fairly related to the services provided by the State." *Brady*, 430 U.S. at 279. The party raising a Commerce Clause challenge carries the burden of persuasion. *See Container Corp. of Am. v. Franchise Tax Bd.*, 463 U.S. 159, 164 (1983).

Use tax collection and remittance responsibilities can be constitutionally imposed on an entity only if the entity has some physical presence in the taxing state and its activities have a substantial nexus to the state. *Quill Corp. v. North Dakota*, 504 U.S. 298, 314-18 (1992). The physical presence need not be "substantial," but must be more than the "slightest presence." *Brown's Furniture, Inc. v. Wagner*, 665 N.E.2d 795, 802 (Ill. 1996). For instance, in *National Bellas Hess, Inc. v. Department of Revenue*, the Supreme Court held that a state may not impose a use tax obligation on an out-of-state mail order firm where the firm's only contacts with the state

are by common carrier or mail. 386 U.S. 753, 758-60 (1967). An entity has a sufficient physical presence, however, if it owns property in the taxing state or "'conduct[s] . . . economic activities in the taxing [s]tate performed by [either the entity's] personnel or on its behalf.'" *Brown's Furniture, Inc.*, 665 N.E.2d at 803 (quoting *Orvis Co., Inc. v. Tax Appeals Tribunal of N.Y.*, 654 N.E.2d 954, 961 (N.Y. 1995) (finding the physical presence requirement satisfied where an out-of-state business sent employees to New York on forty-one occasions during a three-year period to help customers with service related problems)). "[T]he crucial factor governing nexus is whether the activities performed in [the taxing] state on behalf of the [entity required to collect the tax] are significantly associated with the [entity's] ability to establish and maintain a market in th[e] state for the sales." *Tyler Pipe Indus. v. Wash. State Dep't of Revenue*, 483 U.S. 232, 250 (1987) (internal quotation omitted) (finding the physical presence requirement satisfied even though the corporation's only contact with the taxing state was through non-employee sales representatives who resided there because they provided services that were essential to the corporation's ability to make sales in the taxing state); *Scripto, Inc. v. Carson*, 362 U.S. 207, 213 (1960) (finding a Georgia corporation subject to Florida's use tax where the corporation's only contact with Florida was through independent contractors selling its products there).

In its latest opinion on interstate sales and use taxes, however, the Supreme Court did not mention the vendor's physical presence in the taxing state but focused on the nature and extent of the taxable activity that occurred there. *See Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 177 (1995). The statute at issue in that case imposed a tax on the full price of a bus ticket purchased in Oklahoma for travel from Oklahoma to another state and required the bus company to collect and remit the tax to the state of Oklahoma. *Id.* at 177-78. Relying on cases decided before *Quill*, the Court said it "had long been settled" that a sale of goods has a sufficient nexus to

11

the state in which it was consummated to be taxed by that state and the provision of services has the requisite nexus to the taxing state if the service is billed or charged to an address, or paid by an addressee, within that state. *Id.* at 184. The Court, finding that the Oklahoma tax fell within this authority, concluded that because "Oklahoma is where the ticket is purchased" and the service originates, "[t]here is 'nexus' aplenty." *Id.*

The Court holds that such a nexus is present here. First, the tax is levied for the privilege and use of renting a hotel room in Rosemont. § 10-22. The tax is paid by the rentor, who uses the room, regardless of where or how he made the reservation. § 10-23(b). Second, defendants enter into contracts with hotels in Rosemont for the right to market, facilitate and book reservations for their properties, and they profit from such reservations. (Defs.' LR 56.1 Stmt. ¶ 29.) The fact that the customer pays for the hotel room online, as opposed to in person at the hotel, is not of constitutional significance, given the nature of the in-state activity involved, *i.e.*, the fact that the consumer stays in a hotel in Rosemont, the majority of the money for the hotel stay is remitted to Rosemont and the purpose of defendants' online transaction is to have the right to use property in Rosemont. (*Id.* ¶¶ 29, 32, 34-35.) Although the hotels are not defendants' regular employees or agents, the services provided by the hotels "are significantly associated with the [defendants'] ability to establish and maintain a market" in the taxing state. *Tyler Pipe Indus.*, 483 U.S. at 250. "Without the hotels actually providing the sleeping accommodations to the customer, [defendants] would be entirely unable to conduct business within the state." *Travelscape, LLC v. S.C. Dep't of Revenue*, 705 S.E.2d 28, 37 (S.C. 2011) (holding that Travelscape had a sufficient physical presence with the taxing state for dormant Commerce Clause purposes, mainly because of its business contracts with hotels in the taxing state); *see Charleston, S.C. v. Hotels.com, LP*, 586 F. Supp. 2d 538, 544 (D.S.C. 2008) (holding that use tax obligations on OTCs do not violate the

12

dormant Commerce Clause where OTCs have proactively marketed, booked and leased hotel rooms and other accommodations that are physically located in the taxing state); *Expedia, Inc.*, 681 S.E.2d at 128 (holding that tax collection obligations imposed on Expedia were constitutional because it had agreed to make the collections pursuant to contracts with the hotels). Because the record shows that defendants have a substantial nexus with Illinois, the first prong of the *Complete Auto* test is satisfied.[3]

The second *Complete Auto* factor, fair apportionment, is satisfied as well. The purpose behind this factor is to ensure that each state taxes only its fair share of an interstate transaction. *Goldberg*, 488 U.S. at 260-61. The tax in this case is on a use that can only occur in one place – the Village of Rosemont. Thus, no other state or municipality can levy a tax on this "use." *See Brown's Furniture, Inc.*, 665 N.E.2d at 804 (holding that fair apportionment factor was satisfied because use tax applied only to items delivered to Illinois, not those delivered elsewhere); *see also Travelscape, LLC*, 705 S.E.2d at 38 ("If every State imposed a similar [hotel use tax] on accommodations within its boundaries, no multiple taxation would occur because the same accommodations cannot be furnished in two different states at the same time."). Therefore, the tax is fairly apportioned.

The Tax passes muster under the third factor as well because it does not discriminate against interstate commerce. The tax is applied at the same rate on every hotel reservation transaction in Rosemont, regardless of where the reservation is made or payment occurs. *See D.H. Holmes Co., Ltd. v. McNamara*, 486 U.S. 24, 31 (1988) (holding that use tax does not discriminate against interstate commerce when imposed at the same rate as an in-state sales tax).

---

[3] Defendants also argue that their services do not have a sufficient nexus to Rosemont to be subject to the Tax. As previously discussed, defendants' services are part of the room rental rate. *See supra* Part II. Thus, for the reasons stated above, they also have a substantial nexus to Illinois.

Last, because the Tax is related to services provided in Illinois, the fourth *Complete Auto* factor is also met. *See Commonwealth Edison Co. v. Montana*, 453 U.S. 609, 620-21 (1981). By staying in a hotel in Illinois, the taxpayer has the advantage of the state's police and fire protection, "along with the usual and usually forgotten advantages conferred by the State's maintenance of a civilized society," which together "are justification enough for the imposition of a tax." *See Jefferson Lines*, 514 U.S. at 200. Therefore, the Court finds that the Hotel Tax does not violate the dormant Commerce Clause.

### B. Illinois Constitution

Defendants also argue that the Hotel Tax violates the Illinois Constitution, which permits home rule municipalities, like Rosemont, to tax transactions that take place within its jurisdiction, but not those that occur elsewhere. Ill. Const. art. VII, § 6(a); *see Commercial Nat'l Bank of Chi.*, 432 N.E.2d at 233. An ordinance enacted pursuant to a municipality's home rule powers is presumed to be valid, *see, e.g.*, *Coryn v. City of Moline*, 374 N.E.2d 211, 213 (Ill. 1978), and a plaintiff challenging its constitutionality carries a heavy burden. *See Chi. Park Dist. v. City of Chi.*, 488 N.E.2d 968, 971-72 (Ill. 1986).

The issue before the Court is whether the Hotel Tax, as applied to defendants' services, is enforced extraterritorially in violation of Rosemont's home rule powers. "A local unit of government is not exercising its taxing power extraterritorially when it collects a tax from persons located outside [its] boundaries . . . who do business within those boundaries." *Forsberg v. City of Chi.*, 502 N.E.2d 283, 290 (Ill. App. Ct. 1986) (holding that the City's boat tax was not extraterritorial as applied to people who reside outside the City, but enter City harbors, use City facilities and dock their boats on waterways in the City); *see Ill. Wine & Spirits Co v. Cnty. of*

14

*Cook*, 548 N.E.2d 416, 420-21 (Ill. App. Ct. 1989) (upholding a county tax on alcoholic beverages as applied to a wholesaler located outside the city because it "conducted business within the county" by supplying retailers with alcohol for sale in the county). As previously discussed, defendants enter into contracts with hotels in Rosemont to market, facilitate and book reservations for them and profit from such reservations. (Defs.' LR 56.1 Stmt. ¶ 29.) Without the contracts with the hotels, defendants would not be able to conduct business in Rosemont. Because defendants do business within the Village of Rosemont, the Court holds that the Hotel Tax is not applied extraterritorially.

### C. Internet Tax Freedom Act

Defendants argue that the Hotel Tax violates the Internet Tax Freedom Act ("ITFA"), which prohibits a state from enacting a discriminatory tax on electronic commerce. Pub. L. No. 105-277, § 1102(a)(2) (codified at 47 U.S.C. § 151 note). A tax is discriminatory under the ITFA if it:

> (i) is not generally imposed and legally collectible by such State or such political subdivision on transactions involving similar property, goods, services, or information accomplished through other means;
> (ii) is not generally imposed and legally collectible at the same rate by such State or such political subdivision on transactions involving similar property, goods, services, or information accomplished through other means . . . ; [or]
> (iii) imposes an obligation to collect or pay the tax on a different person or entity than in the case of transactions involving similar property, goods, services, or information accomplished through other means.

§ 1105. Defendants argue that the Hotel Tax is discriminatory because it does not apply to traditional travel agents, who perform the same function as they do.

The Court disagrees. Unlike defendants, travel agents operate under the "Agency" business model not the "Merchant" model. (Pl.'s LR 56.1 Stmt. ¶ 5.) Under the Agency model, the hotel, not the travel agent, decides how much the consumer pays for the room and the travel agent's fee is not included in that rate. (*Id.*) Rather, the hotel pays the agent's fee after the customer has paid the hotel for the room. (*Id.*) Because the travel agent's fee is not a charge customers must pay to occupy a hotel room, it is not part of the "room rental rate" subject to the Tax. Thus, Rosemont's failure to impose the Tax on the fees of travel agents and other intermediaries that use the Agency Model is not discriminatory.[4]

Last, defendants argue, without any citation to the record, that the tax is discriminatory because OTCs are charged a higher effective rate due to their services being part of the "room rental rate." This argument also has no merit. The tax is applied at the same rate regardless of whether the transaction occurs online or offline and is applied to the amount the rentor pays to occupy a room in Rosemont. § 10-23. Defendants have not created a genuine issue of material fact that such rate is applied in a discriminatory manner. Therefore, summary judgment is granted in favor of plaintiff.

### D. Due Process & Equal Protection Rights

Defendants contend that the Hotel Tax is void for vagueness, and therefore violates the due process clauses of the U.S. and Illinois Constitutions. A statute violates these clauses "only if its terms are so ill-defined that the ultimate decision as to its meaning rests on the opinions and whims of the trier of fact rather than any objective criteria or facts." *People v. Burpo*, 647 N.E.2d

---

[4] There is no evidence to suggest that Rosemont exempts others who operate under the Merchant Model from the Ordinance.

16

996, 999 (Ill. 1995); *see Coats v. City of Cincinnati*, 402 U.S. 611, 614 (1971). A statute is vague only if "men of common intelligence must necessarily guess at its application or meaning." *Coats*, 402 U.S. at 614 (quotation omitted); *see Burpo*, 647 N.E.2d at 506. The party challenging the statute has the burden of clearly establishing its constitutional infirmity. *People v. Bales*, 483 N.E.2d 517, 520 (Ill. 1985).

Defendants' main contention is that "owner" and "room rental rate" are not defined such that a reasonable person of ordinary knowledge could determine whether the terms apply to them. The Court disagrees. The term "owner" is defined by the Ordinance to include anyone who receives the "consideration for the rental." § 10-24. Consideration and rental are common terms that adequately express the intent of the legislature, especially where, as here, the only form of consideration accepted to rent a hotel room is money. *Stern v. Nw. Mortg., Inc.*, 688 N.E.2d 99, 103-04 (Ill. 1997) (finding that a term was not unconstitutionally vague because it was not indefinite and uncertain such that the Court could not determine the intent of the legislature). Similarly the term "room rental rate" is specifically described in the statute as the amount paid by the "rentor" for "the privilege of occupying the hotel or motel room." §§ 10-23(b)-(c). Further, the definitions of "owner" and "room rental rate" do not conflict with other terms in the Ordinance and are consistent with its purpose. *See O'Donnell v. City of Chi.*, 842 N.E.2d 208, 217 (Ill. App. Ct. 2005) (holding that a term was not unconstitutionally vague where it was defined in the statute with ordinary language and definite enough to let the public know to whom it applied). Therefore, the Court finds that the statute is not unconstitutionally vague and grants summary judgment in favor of plaintiff on this issue.

Defendants also argue that the Ordinance violates their equal protection rights because there is no rational basis for including them in the definition of "owner" but excluding travel

agents and other travel intermediaries. The Court disagrees. If an ordinance neither burdens a fundamental right nor creates a suspect classification, "Federal and State guarantees of equal protection require only that there be a rational basis for the differential treatment of those taxed and those not taxed." *N. Pole Corp. v. Vill. of E. Dundee*, 635 N.E.2d 1060, 1066 (Ill. App. Ct. 1994) (citing *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 359-60 (1973)). A classification has a rational basis under both the U.S. and Illinois Constitutions if it is based on a real and substantial difference and has some relevance to the purpose for which it was made. *Walters v. City of St. Louis*, 347 U.S. 231, 237 (1954); *Arangold Corp v. Zehnder*, 768 N.E.2d 391, 399 (Ill. App. Ct. 2002). Further, "[a] classification for taxation purposes carries a strong presumption of validity, and it will survive a challenge on equal protection grounds unless the party asserting the challenge negates every conceivable basis for the classification." *Lehnhausen*, 410 U.S. at 364; *see Ball v. Vill. of Streamwood*, 665 N.E.2d 311, 315 (Ill. App. Ct. 1996). Put simply, the rational basis standard is a "low hurdle" to vault. *Reed v. Farmers Ins. Grp.*, 720 N.E.2d 1052, 1058 (Ill. 1999).

The Ordinance has no trouble doing so. As previously discussed, OTC customers get the right to occupy a hotel room in Rosemont only if they pay defendants' fees, which is not true for customers of travel agents. Therefore, defendants receive the consideration for the rooms, while travel agents do not. (Pl.'s LR 56.1 Stmt. ¶ 5.) That is a rational basis for Rosemont's decision to impose collection and remittance duties on OTCs but not travel agents.

## Conclusion

For the reasons set forth above, the Court denies defendants' motion for summary judgment [doc. no. 100] and grants plaintiff's cross-motion for summary judgment on liability [doc. no. 104]. At the next status hearing, the parties should be prepared to discuss the final disposition of the case.


**SO ORDERED**     ENTER:  October 14, 2011

_____
 **RONALD A. GUZMAN**
 **United States District Judge**