**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THE VILLAGE OF ROSEMONT, ILLINOIS, | ) ) ) | |
| Plaintiff, | ) ) | 09 C 4438 |
| v. | ) ) | Judge Ronald A. Guzmán |
| PRICELINE.COM INC, TRAVELWEB LLC, TRAVELOCITY.COM LP, SITE59.COM LLC, EXPEDIA, INC., HOTELS.COM, LP and HOTWIRE, INC., | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

On October 14, 2011, the Court found that the Rosemont Hotel Tax Ordinance requires defendants to pay taxes to Rosemont on the retail rate of hotel rooms they sell to consumers. The case is now before the Court on the parties' cross-motions for summary judgment on the issue of damages. For the reasons set forth below, the Court grants in part and denies in part the parties' motions.

**Discussion**

The amount of damages defendants must pay depends on: (1) the length of the limitations period that governs plaintiff's claims and the date on which it started to run; (2) the method of computing interest on the unpaid taxes; and (3) the amount of penalties, if any, that are assessed. The Court will address each issue in turn.

The statute of limitations applicable to claims under the Hotel Tax Ordinance is set forth in the Illinois Taxpayers' Bill of Rights Act ("ITBR"), which provides:

> . . . . Each unit of local government must provide appropriate statutes of limitation for the determination and assessment of taxes . . . provided, however, that a statute of limitations may not exceed the following:
>
> (1) No notice of determination of tax due or assessment may be issued more than 4 years after the end of the calendar year for which the return for the period was filed or the end of the calendar year in which the return for the period was due, whichever occurs later.
>
> (2) If any tax return was not filed or if during any 4-year period for which a notice of tax determination or assessment may be issued by the unit of local government and the tax paid or remitted was less than 75% of the tax due for that period, the statute of limitations shall be no more than 6 years after the end of the calendar year in which the return for the period was due or the end of the calendar year in which the return for the period was filed, whichever occurs later. In the event that a unit of local government fails to provide a statute of limitations, the maximum statutory period provided in this Section applies.

50 Ill. Comp. Stat. 45/30; (*see* Pl.'s Mot. Summ. J. Damages, Ex. D, Village of Rosemont Ordinance 2000-12-6D ("Tax Rights Ordinance"), § 15 (same).) Because there is no dispute that the hotels filed monthly tax returns with respect to the transactions at issue here, defendants say the four-year limitations period set forth in the ITBR and Tax Rights Ordinance governs.

The Court disagrees. The returns filed by the hotels reflect the taxes on the net room rates they charged defendants, not the retail rates defendants charged consumers. It is undisputed that defendants did not collect or remit any tax on the retail room rates or file returns reflecting such taxes. Thus, the six-year period of the ITBR and the Tax Rights Ordinance applies.

Alternatively, defendants contend that by measuring the limitations period from the date a tax determination notice is issued, the ITBR and Tax Rights Ordinance make the issuance of such a notice a condition precedent to filing suit. Because the only notice of liability plaintiff gave to defendants was its October 31, 2010 expert report, defendants argue that plaintiff cannot recover any taxes due before that date.

There are several problems with defendants' argument. First, according to the plain language of the ITBR and Tax Rights Ordinance, the limitation periods start to run from the end of the calendar year for which a return was filed or due or the date a tax determination notice is issued. *See* 50 Ill. Comp. Stat. 45/30(1); Tax Rights Ordinance, § 15. Moreover, defendants' argument assumes that the limitations period for plaintiff's claims continued to run after this suit was filed, a violation of "the basic rule in Illinois that the filing of suit terminates the running of the statute of limitations." *Ill. Dep't of Revenue v. Country Gardens, Inc.*, 495 N.E.2d 161, 166 (Ill. App. Ct. 1986); *see Baird & Warner, Inc. v. Addison Indus. Park, Inc.*, 387 N.E.2d 831, 845 (Ill. App. Ct. 1979) ("[T]he filing of the suit terminates the running of the statute [of limitations] or makes it irrelevant."). In short, the Court rejects defendants' argument that the limitations period started, and thus plaintiff's recovery should be measured from, the date its expert report was issued.

The Court agrees with plaintiff that the limitations period is subject to the discovery rule; that is, that the period began to run when "plaintiff knew or should have known of the existence of the right to sue." *Shelton v. Country Mut. Ins. Co.*, 515 N.E.2d 235, 240 (Ill. App. Ct. 1987) (quotation omitted); *see Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.*, 334 N.E.2d 160, 162 (Ill. 1975) ("'[W]here the passage of time does little to increase the problems of proof, the ends of justice are served by permitting plaintiff to sue within the statutory period computed from the time at which he knew or should have known of the existence of the right to sue.'") (quoting *Rozny v. Marnul*, 250 N.E.2d 656, 664 (Ill. 1969)); *see also Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1135-36 (Ill. 1995) (stating that the discovery rule originated in tort cases but has been applied to a variety of claims because "courts have been more concerned with whether the underlying facts support application of the discovery rule than how [an]

action [is] characterized"). "Whether the injured person has become possessed of sufficient information concerning his or her injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved is usually a question of fact." *Pruitt v. Schultz*, 601 N.E.2d 1372, 1374 (Ill. App. Ct. 1992).

Plaintiff states that it first realized defendants were liable for hotel taxes in March or April 2009, when it received from its counsel a description of defendants' "merchant model" business strategy. (Volk Decl. Resp. Defs.' Cross-Mot. Summ. J. Damages, Ex. 1, Rosenthal Dep. 62, 218.) There is no dispute, however, that defendants described the merchant model in their SEC filings as early as 2001. (Volk Decl. Supp. Pl.'s Cross-Mot. Summ J. Liability, Ex. 2, Interactive 2002 Form 10-K at 20; *id.*, Ex. 9, Hotels.com 2002 Form 10-K at 8; *id.*, Ex. 14, Travelocity.com 2001 Form 10-K at 6; Defs.' Resp. Pl.'s Stmt. Add'l Facts Opp'n Defs.' Cross-Mot. Summ. J. Damages, Ex. A, InterActive Corp. Sept. 2003 Form 10-Q at 35.) Moreover, defendants have offered articles that appeared in the Philadelphia Inquirer, the Boston Globe, the Orlando Sentinel, the St. Louis Post-Dispatch, the Los Angeles Times, Newsday, the San Jose Mercury News, the New York Times and the Chicago Tribune between 2002 and 2005, describing the merchant model and questioning whether defendants were underpaying local taxing authorities. (*See* Defs.' LR 56.1 Stmt. Add'l Facts Opp'n Pl.'s Mot. Summ. J. Damages & Supp. Cross-Mot. Summ. J. Damages, Exs. C & D, Newspaper Articles.) Given the conflicting evidence, a trier of fact will have to determine when plaintiff knew or should have known that defendants were liable for unpaid taxes and thus, when the limitations period began to run.

The parties also dispute whether the interest due on the amount of unpaid tax, whatever it is determined to be, is simple or compound. "Illinois law does not favor compounding of interest."

*Tadros v. Kuzmak*, 660 N.E.2d 162, 169 (Ill. App. Ct. 1995). Thus, unless a contract or statute explicitly calls for compound interest, Illinois courts do not award it. *See, e.g.*, *Weigel Broad. Co. v. Smith*, 682 N.E.2d 745, 752 (Ill. App. Ct. 1996) ("In general, compound interest is available only when there is no statutory bar and the parties specifically agree to compound interest."); *Martin v. Heinold Commodities, Inc.*, 608 N.E.2d 449, 456 (Ill. App. Ct. 1992) ("[A]bsen[t] . . . express statutory or contractual language providing for prejudgment interest to be compounded, interest must be computed on a simple basis."), *rev'd in part on other grounds*, 643 N.E.2d 734 (Ill. 1994); *Helland v. Helland*, 573 N.E.2d 357, 359 (Ill. App. Ct. 1991) (explaining that statutes calling for annual interest "[are] interpreted as providing for only simple rather than compound interest"). The Tax Rights Ordinance does not state that interest will be compounded. (*See* Pl.'s Mot. Summ. J. Damages, Ex. D, Rosemont Tax Rights Ordinance § 11(a) ("[T]he amount of interest to be assessed on a late payment, underpayment, or nonpayment of . . . tax . . . [is] 1.5% per month or part thereof.").) Thus, the Court holds that Rosemont is entitled only to simple interest on the unpaid taxes.

That leaves the issue of penalties, an assessment of which defendants say would violate their due process rights because: (1) the Hotel Tax Ordinance does not sufficiently apprise them of their liability; and (2) there is no evidence that they intentionally failed to pay taxes. Defendants raised, and the Court rejected, the first argument during the liability phase of the suit. (*See* 10/14/11 Mem. Opinion & Order 16-17.) Thus, the Court will not address it again here.

Defendants' second argument is based on the Supreme Court's decision in *Southwestern Telegraph & Telephone Co. v. Danaher*, 238 U.S. 482 (1915). The plaintiff in that case sued the defendant pursuant to an Arkansas statute that required telephone companies to supply services

5

"without discrimination" to consumers who complied with the companies' reasonable policies and imposed a $100.00-per-day penalty against violators. *Id.* at 485 (quotation omitted). Plaintiff alleged that defendant refused to give her service and a pre-payment discount for a total of sixty-three days. *Id.* at 486. Defendant said it took those actions in accordance with its uniformly-enforced policy of refusing to provide service and discounts to customers like plaintiff, whose account was in arrears. *Id.* at 486-87. The state courts held that defendant's regulation, though evenly applied, was unreasonable, and thus assessed $6,300.00 in penalties against it. *Id.* at 488. Defendant appealed to the Supreme Court, arguing that the state courts' application of the statute violated its Due Process rights. *Id.* at 489.

> The Supreme Court agreed:
>
> [Even if] the company should have known that the supreme court of the state . . . might hold the [policy] unreasonable, even though the prevailing view elsewhere was otherwise, the question remains whether, in the circumstances, penalties aggregating $6,300 could be imposed without departing from the fundamental principles of justice embraced in the recognized conception of due process of law. In our opinion the question must be answered in the negative. There was no intentional wrongdoing, no departure from any prescribed or known standard of action, and no reckless conduct. Some [policy] establishing a mode of inducing prompt payment of the monthly rentals was necessary. . . . [Defendant] was engaged in a public service which could not be neglected. The protection of its own revenues and justice to its paying patrons required that something be done. It acted by adopting the [policy] and then impartially enforcing it. There was no mode of judicially testing the [policy's] reasonableness in advance of acting under it, and . . . it had the support of repeated adjudications in other jurisdictions. In these circumstances to inflict upon the company penalties aggregating $6,300 was so plainly arbitrary and oppressive as to be nothing short of a taking of its property without due process of law.

*Id.* at 490-91.

Defendants contend that *Danaher* precludes an assessment of penalties against them because there is no evidence that they intentionally violated the Hotel Tax Ordinance. But *Danaher* did not

6

hold that intent was required to assess penalties under the Arkansas statute, let alone make intent a constitutional prerequisite to the assessment of penalties generally. Rather, the Court held that the Arkansas statute could not, consistent with the Constitution, both require defendant to provide universal phone service and penalize it for uniformly enforcing payment policies that enabled it to do so. Because the Hotel Tax Ordinance does not subject defendants to the kind of Catch-22 condemned by *Danaher*, that case does not preclude an assessment of penalties here.

The plain language of the Hotel Tax Ordinance makes an assessment of penalties mandatory: "If, for any reason, any tax is not paid or remitted when due, a penalty at the rate of one and one half percent (1.5%) per 30 day period, or portion thereof, from the date of delinquency shall be added and paid to the Village." (*See* Pl.'s Mot. Summ. J. Damages, Ex. A, Hotel Tax Ordinance, § 2(c).) The Court, therefore, holds that defendants are liable for penalties at the rate set forth in the Hotel Tax Ordinance, up to the twenty-five percent cap set forth in the ITBR and Tax Rights Ordinance. *See* 50 Ill. Comp. Stat. 45/60 ("If no return is filed before the issuance of a notice of tax deficiency or of tax liability to the taxpayer, any failure to file penalty may not exceed 25% of the total tax due for the applicable reporting period for which the return was required to have been filed."); (Pl.'s Mot. Summ. J. Damages, Ex. D, Tax Rights Ordinance, § 11(b) (same)).

**Conclusion**

For the reasons set forth above, the Court grants in part and denies in part the parties' cross-motions for summary judgment [135, 143]. At the next status hearing the Court will set a date for trial.

**SO ORDERED.**                                                       **ENTERED:**

**July 31, 2012**

*Ronald A. Guzman*
_____
**HON. RONALD A. GUZMAN**
**United States District Judge**